UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

Nos. 12-2336
     12-2349

_____

UNITED STATES,
Appellee

v.

ROBERT O. ROBINSON,
Defendant-Appellant

_____

ON APPEAL FROM JUDGMENTS IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____

BRIEF FOR ROBERT O. ROBINSON

_____

For Robert O. Robinson:

Kenneth Seiger
P. O. Box 470725
Brookline, MA 02447
617-277-8544
Kenneth.seiger@gmail.com
Court Id. No: 19781

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**..................................iii

**STATEMENT OF JURISDICTION**..............................1

**STATEMENT OF ISSUES**...................................2

**STATEMENT OF THE CASE**.................................2

**STATEMENT OF FACTS**...................................5

    **Trial representation**..............................5

    **Trial evidence**..................................12

    **Sentencing**......................................30

**SUMMARY OF ARGUMENT**.................................32

**ARGUMENT**...........................................32

**I.**    **THE DISTRICT COURT DEPRIVED ROBERT ROBINSON
    OF HIS CONSTITUTIONAL RIGHT TO COUNSEL
    BY (A) REFUSING TO ALLOW A CONTINUANCE TO
    OBTAIN NEW COUNSEL; AND (B) PERMITTING HIM TO
    REPRESENT HIMSELF**................................32

**A.**    **The district court abused its discretion
    by refusing to permit a continuance to allow
    the defendant to secure new counsel**..............32

**B.**    **The district court denied the defendant his
    right to counsel by permitting him to
    represent himself without first conducting
    an adequate inquiry into the intelligent and
    knowing nature of his decision**..................39

**CONCLUSION**..........................................50

**CERTIFICATE OF COMPLIANCE**...............................50

**CERTIFICATE OF SERVICE**.................................51

**ADDENDUM**..............................................52

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>:

<u>Brewer</u> v. <u>Williams</u>,
  430 U.S. 387 (1977)................................41,48

<u>Faretta</u> v. <u>California</u>,
  422 U.S. 806 (1975)................................40-47

<u>Flanagan</u> v. <u>United States</u>,
  465 U.S. 259 (1984).................................49

<u>Maynard</u> v. <u>Meachum</u>,
  545 F.2d 273 (1st Cir. 1976)........................41

<u>McKaskle</u> v. <u>Wiggins</u>,
  465 U.S. 168 (1984).................................49

<u>Morris</u> v. <u>Slappy</u>,
  461 U.S. 1 (1983)...................................34

<u>Tuitt</u> v. <u>Fair</u>,
  822 F.2d 166 (1st Cir. 1987).....................36,42

<u>United States</u> v. <u>Allen</u>,
  789 F.2d 90 (1st Cir. 1986)......................34-35

<u>United States</u> v. <u>Betancourt-Arretuche</u>,
  933 F.2d 89 (1st Cir. 1991)......................42,49

<u>United States</u> v. <u>Campbell</u>,
  874 F.2d 838 (1st Cir. 1989).....................42,44

<u>United States</u> v. <u>Francois</u>,
  ___ F.3d ___
  (1st Cir., No. 11-2195, 4/22/2013).........39,40,45,47

<u>United States</u> v. <u>Gaffney</u>,
  469 F.3d 211 (1st Cir. 2006)........................35

<u>United States</u> v. <u>Gonzalez-Lopez</u>,
  548 U.S. 140 (2006).................................33

-iii-

<u>United States</u> v. <u>Hallock</u>,
  941 F.2d 36 (1st Cir.1991)...........................34

<u>United States</u> v. <u>Kneeland</u>,
  148 F.3d 6 (1st Cir. 1998).....................40,45,46

<u>United States</u> v. <u>LaBare</u>,
  191 F.3d 60 (1st Cir.1999)...........................45

<u>United States</u> v. <u>Maldonado</u>,
  708 F.3d 38 (1st Cir. 2013)...................33,35,36

<u>United States</u> v. <u>Manjarrez</u>,
  306 F.3d 1175 (1st Cir. 2002).................39-42,44

<u>United States</u> v. <u>Mateo</u>,
  950 F.2d 44 (1st Cir.1991)...........................49

<u>United States</u> v. <u>Panzardi Alvarez</u>,
  816 F.2d 813 (1st Cir. 1987).....................36-38

<u>United States</u> v. <u>Poulack</u>,
  556 F.2d 83 (1st Cir.1977)...........................34

<u>United States</u> v. <u>Proctor</u>,
  166 F.3d 396 (1st Cir. 1999)............33,39-40, 48-49

<u>United States</u> v. <u>Richardson</u>,
  894 F.2d 492 (1st Cir. 1990).....................34,36

<u>United States</u> v. <u>Woodard</u>,
  291 F.3d 95 (1st Cir. 2002)............33-37, 39,40,44

<u>Wheat</u> v. <u>United States</u>,
  486 U.S. 153 (1988).................................33

## **<u>Statutes</u>**:

18 U.S.C. § 3231.......................................1

21 U.S.C. § 841.................................1-3,30,31

21 U.S.C. § 846......................................1,2

28 U.S.C. § 1291.......................................1

## STATEMENT OF JURISDICTION

Robert O. Robinson was charged in the United States District Court (Rhode Island) with violations of 21 U.S.C. § 846 and 21 U.S.C. § 841. The United States District Court had jurisdiction pursuant to 18 U.S.C. § 3231 (district courts of the United States have original jurisdiction of all offenses against United States laws).

On no. 1:11-cr-00147, the district court entered judgment on October 31, 2012 (A. 11, 30). On no. 1:01-cr-00103, the district court revoked Mr. Robinson's probation on October 31, 2012 (A. 42, 46). Mr. Robinson filed his notice of appeal of both judgments on October 31, 2012 (A. 11, 42).

The United States Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291 (courts of appeal have jurisdiction of appeals of all final decisions of the district courts of the United States).

This appeal is from final judgments of the United States District Court. The Court of Appeals entered 12-2349 on its docket on November 9, 2012, entered no. 12-2336 on November 19, 2012, and consolidated the two matters on March 11, 2013.

-1-

**STATEMENT OF ISSUES**

I.  Whether the district court denied the defendant's Sixth Amendment right to counsel by refusing to grant a continuance to secure new counsel, and further denied his right to counsel by permitting him to represent himself at trial without first conducting an adequate inquiry into the intelligent and knowing nature of his decision.

**STATEMENT OF THE CASE**

This is Robert O. Robinson's consolidated appeal of the United States District Court's judgments on two consolidated matters: no. 1:11-cr-00147 and no. 1:01-cr-00103.

No. 1:11-cr-00147: Mr. Robinson was indicted by the Federal Grand Jury for the District of Rhode Island on August 17, 2011 (A. 13-19). The eleven-count indictment charged Mr. Robinson as follows: (Count 1) conspiracy to distribute over 280 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) and 846 and 18 U.S.C. § 2; (Counts 2, 9, 10, 11) possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) and Title 18, U.S.C. § 2; (Counts 3-8) possession with intent to distribute cocaine base, in violation of Title 21,

-2-

U.S.C. § 841(a)(1) and (b)(1)(C) and Title 18, U.S.C. § 2 (A. 13-19).

On June 12, 2012, the court (Mary Lisi, J.) impaneled a jury (A. 9; Tr. I:40). Trial commenced on June 18, 2012 and concluded on June 20, 2012 (A. 9; Tr. I:137; Tr. II:114). The jury rendered guilty verdicts on each count (A. 10; Tr. II:186-187).

On July 12, 2012, Mr. Robinson filed a pro se motion for new trial (A. 10). The court (Lisi, J.) denied the pro se motion for new trial on October 31, 2012 (A. 11).

The court (Lisi, J.) sentenced Mr. Robinson on October 31, 2012 (A. 11; Tr. II:207). The court imposed a sentence of 240 months incarceration on Counts 1-11, to run concurrently with each other (A. 11,32; Tr. II:229). The court further ordered supervised release for ten years on Count 1; five years supervised release on Counts 2-11; and a special assessment of $1,100 (A. 11, 33-35; Tr. II:230).

Mr. Robinson filed a timely notice of appeal on October 31, 2012 (A. 11, 37). The Court of Appeals entered the matter on its docket on November 9, 2012.

No. 1:01-cr-00103: On October 10, 2001, Mr. Robinson was indicted on two counts of a violation of 21 U.S.C. § 841 (A. 44-45). On December 3, 2001, he entered a change

-3-

of plea (Ernest Torres, J.) (A. 40). The court accepted the plea and adjudicated Mr. Robinson guilty (A. 40). On February 22, 2002, the court sentenced Mr. Robinson to 84 months imprisonment on each count, concurrent, with five years supervised release (A. 40).

On September 4, 2012, the district court held a preliminary revocation hearing (Magistrate Judge Lincoln Almond) (A. 42; Tr. II:192). The court took judicial notice of the jury verdict in no. 1:11-cr-00147 (A. 42 [document 20, page 2]; Tr. II:195). On September 11, 2012, the court issued a Report and Recommendation, recommending that the court find Mr. Robinson in violation of his supervised release conditions and deferring the matter to Judge Lisi as to the appropriate sentence (A. 42 [document 20, page 6]).

On October 31, 2012 (the same day of sentencing on no. 1:11-cr-00147), the court (Lisi, J.) held a final hearing (A. 42; Tr. II:208). The court sentenced Mr. Robinson to  24 months imprisonment to run consecutively to the term imposed on no. 1:11-cr-00147 (A. 42; Tr. II:229).

Mr. Robinson filed a timely notice of appeal on October 31, 2012 (A. 42, 48). The Court of Appeals entered the matter on its docket on November 19, 2012.

-4-

On March 11, 2013, the Court of Appeals consolidated no. 1:11-cr-00147 and no. 1:01-cr-00103.

## STATEMENT OF FACTS

**Trial representation and pretrial proceedings**: Mr. Robinson was arrested on June 13, 2011 (A. 3). His first retained counsel, Attorney Steven DiLibero, entered his appearance on June 13, 2011 (A. 3). At the hearing with counsel, the magistrate judge informed Mr. Robinson of his right to remain silent and his right to an attorney (Tr. I:3-4). The magistrate also informed Mr. Robinson of the nature of the criminal complaint and his right to a preliminary hearing, which Mr. Robinson waived (Tr. I:5-6).

On August 2, 2011, Mr. Robinson filed a pro se motion to terminate Attorney DiLibero's representation (A. 3 [document 10]). On August 3, 2011, Attorney DiLibero filed a motion to withdraw, alleging a breakdown in communications with Mr. Robinson (A. 4 [document 12]). On August 17, 2011, the magistrate judge continued the matter for the appearance of successor counsel (A. 4; Tr. I:12-14).

On August 31, 2011, the magistrate judge formerly arraigned Mr. Robinson (A. 4; Tr. I:23). The court

further put Mr. Robinson on notice of the probation surrender (Tr. I:21). The court continued the matter again pending the appearance of successor counsel (Tr. I:28). On September 7 and 26, 2011, the court continued the matter again pending the appearance of successor counsel (A. 5; Tr. I:32, 38-39). On October 7, 2011, Attorney Matthew Smith entered an appearance (A. 5 [document 40]).

Prior to trial, there were four codefendants who were also named coconspirators in the indictment: (1) Tonia Rawlinson (No. 1:11-cr-00147-ML-LDA-2), Jason Roman (No. 1:11-cr-00147-ML-LDA-3), Courtney Desrochers (No. 1:11-cr-00147-ML-LDA-4), and Richard Marks (No. 1:11-cr-00147-ML-LDA-5). According to the docket entries, all four codefendants plead guilty prior to trial. Tonia Rawlinson plead guilty on January 18, 2012. Jason Roman plead guilty on April 4, 2012. Courtney Desrochers plead guilty on May 3, 2012. Richard Marks plead guilty on April 5, 2012.

On October 11, 2011, the court issued a trial notice, scheduling the matter for impanelment on December 8, 2011 (A. 5 [document 41]). On November 8, 2011, the court rescheduled the matter to the February 2012, impanelment calendar, due to a request by codefendant

-6-

Richard Marks (A. 5). On December 15, 2011, the court rescheduled the matter to February 2, 2012, for impanelment (A. 6 [document 47]). On December 29, 2011, the court scheduled the matter to January 23, 2012, for a final conference (A. 6 [document 49]).

On January 11, 2012, the government filed an assented motion to continue for sixty days (A. 6 [document 55]). The basis for the motion was to permit the parties to continue with plea negotiations (Document 55). The court granted the motion and continued the matter for sixty days (A. 6).

On March 2, 2012, the court rescheduled the matter to April 11, 2012, for impanelment (A. 7 [document 67]). On March 27, 2012, Mr. Robinson filed an assented motion to continue to the May 2012 calendar (A. 7 [document 75]). The basis for the motion was to continue with plea negotiations (A. 7 [document 75]). The court granted the motion and rescheduled the matter to the May 2012 calender (A. 7 [document 77]).

On April 17, 2012, Mr. Robinson filed an assented motion to reassign the matter to the next calendar date (A. 7 [document 81]). The motion was based on a family emergency with Attorney Smith (A. 7 [document 81]). The court scheduled the matter to June 12, 2012, for

-7-

impanelment (A. 8 [document 91]).

On June 12, 2012, the day of jury impanelment, Mr. Robinson informed Judge Lisi that he was not ready to proceed to trial (Tr. I:42). Mr. Robinson informed Judge Lisi that he told Attorney Smith over the weekend that he no longer wished to be represented by Attorney Smith because "we're not agreeing on anything" (Tr. I:42).

Judge Lisi informed Mr. Robinson that she would not delay the trial and she intended to select a jury that day (Tr. I:42-43). Mr. Robinson stated that Attorney Smith was not keeping him informed of the motions he filed or everything that was happening (Tr. I:43). He stated that he did not believe Attorney Smith was working for him, and that he did not want to proceed with a lawyer who he did not trust (Tr. I:43-44). Judge Lisi repeated that she intended to impanel that day (Tr.I:45).[1]

Attorney Smith informed Judge Lisi of his communications with Mr. Robinson, including the

---

[1]  Mr. Robinson also moved pro se to recuse Judge Lisi, on the basis that she had a conflict of interest due to her representation of his father when she was an attorney (Tr. I:45). Judge Lisi denied the motion after finding that she had represented his father years earlier but she had no relationship with him (Tr. I:62). Mr. Robinson raised the issue again on the first trial date and Judge Lisi again denied the motion to recuse herself (Tr. I:143-144).

-8-

scheduling of the trial (Tr. I:49). Mr. Robinson had declined to consent to allow the magistrate to impanel a jury (Tr. I:49). Attorney Smith further informed the judge of his furnishing of discovery to Mr. Robinson (Tr. I:50). Attorney Smith informed the judge that he was ready for jury selection, but also informed the judge that Mr. Robinson did not wish to proceed (Tr. I:54).

Mr. Robinson informed Judge Lisi again that he did not wish to be represented by Attorney Smith, and that he believed he was being "forced" into going to trial (Tr. I:55). Judge Lisi responded that she believed Attorney Smith "has worked very well on your behalf", was prepared for trial, and that impanelment would proceed that day (Tr. I:56).

Mr. Robinson responded that "I don't want no part of this" and that he refused "to go through with picking a jury" (Tr. I:57). He stated that he was being "forced" into picking a jury with a lawyer who he did not want (Tr. I:57). Judge Lisi again denied the request (Tr. I:57-58).

Attorney Smith informed Judge Lisi that Mr. Robinson waived his right to be present during jury selection (Tr. I:58). Mr. Robinson stated, "I refuse to be in the court at this time and to go through with this process. I feel

-9-

like I'm being forced into doing it" (Tr. I:58-59). After further consultation with Attorney Smith, Mr. Robinson stated that he wished to be present during jury selection (Tr. I:21). The court proceeded with impanelment and completed impanelment that day (Tr. I:63-133).

On the morning of June 18, 2012, the first day of opening statements and evidence, Mr. Robinson informed Judge Lisi that he had fired Attorney Smith and intended to represent himself pro se (Tr. I:141-142). He requested a continuance in order to hire an assistant (Tr. I:142). Judge Lisi informed Mr. Robinson that the jury had been selected and the case was ready to proceed that day (Tr. I:142). Mr. Robinson responded that he had been forced to select a jury (Tr. I:142).

Judge Lisi asked if Mr. Robinson had any legal training, and he replied that he did not (Tr. I:144). She told him that she believed he was making a "huge mistake to proceed pro se since you are not trained in the law" (Tr. I:144). Mr. Robinson responded that he believed he could represent himself better than Attorney Smith because he did not trust him (Tr. I:144).

Judge Lisi then ordered the case to proceed with Mr. Robinson acting pro se and Attorney Smith as standby counsel (Tr. I:144). Mr. Robinson replied that refused to

have Attorney Smith as standby counsel (Tr. I:145). Judge
Lisi insisted that Attorney Smith remain as standby
counsel, because "otherwise you're going to be walking
into a land mine because you don't know the rules" (Tr.
I:145). Mr. Robinson stated "It's also my right to choose
my own attorney or choose an assistant" (Tr. I:145).
Judge Lisi replied, "Not on the day of trial" (Tr.
I:145). Mr. Robinson said, "Well, you forced me to go
into this trial" (Tr. I:145).

Attorney Smith explained some of the details
regarding his representation of Mr. Robinson (Tr. I:145-
152). He brought him some final discovery and reviewed
the codefendants' plea agreements (Tr. I:145-148).
Attorney Smith stated that although Mr. Robinson did not
trust him, he was prepared to go forward with the trial
(Tr. I:147-148).

Following the order to allow Mr. Robinson to
represent himself, the court swore in the jury (Tr.
I:159), provided preliminary jury instructions (Tr.
I:159-168), and the government delivered its opening
statement (Tr. I:168-179).

Mr. Robinson then delivered his opening statement:
"Today I'm defending myself. I fired my lawyer, Mr.
Smith. I've asked the Court for time to prepare myself

-11-

for this matter" (Tr. I:179). The judge sustained the government's objection, and asked Mr. Robinson if he wished to make an opening statement, but Mr. Robinson declined (Tr. I:180).

During the trial, Mr. Robinson represented himself, making pro se objections and conducting pro se cross-examinations, with Attorney Smith as standby counsel. He also delivered his closing argument pro se (Tr. II:135).

### **Trial evidence**:

Michael Payne was a Special Agent for the Bureau of Alcohol, Tobacco, and Firearms (ATF) (Tr. I:181). Agent Payne conducted an investigation of Robert Robinson which included undercover purchases of cocaine base from Mr. Robinson and his associates (Tr. I:181-182). The investigation involved a confidential informant making controlled buys while under electronic surveillance (Tr. I:182-192).[2]

Prior to conducting each controlled buy, Agent Payne searched the informant to determine that he did not have any contraband, and provided him with money (Tr. I:189). The informant wore an audio device and later a video

---

[2]

The government introduced audio and surveillance videos as exhibits on CD, which are included in a sleeve in the back cover of the appendix. The government also introduced transcripts of the audio recordings, which are included in the appendix.

device (Tr. I:189). The informant drove to Talu's in an undercover ATF vehicle (Tr. I:190). After each transaction, the informant met Agent Payne where he turned over a package to Agent Payne (Tr. I:192). Agents followed the informant from Talu's to ensure that he made no stops prior to meeting Agent Payne (Tr. I:192).

Agent Payne testified that O'Neal tampered with the drugs in four of the drug sales (Tr. II:10-11). Agent Payne allowed O'Neal to drink and then use a government vehicle (Tr. II:16-17).

<u>Informant</u>: The informant testified at trial and identified himself as Lenneth O'Neal, also known as "O'Cyrus" (Tr. II:26). O'Neal had three prior felony convictions: a 2001 conviction for assaulting a police officer (two years in jail); a 2001 conviction for larceny from a person (two years in jail with one year suspended); and a 2006 conviction for possession with intent to distribute narcotics (two and one-half years in jail) (Tr. II:26-27).

In October 2010, O'Neal sold one ounce of crack cocaine to a confidential informant, and in November 2010, he sold the informant a 9 millimeter handgun (Tr. II:27). At the time of Robinson's trial, O'Neal had not been charged with those offenses nor had he received any

promises regarding their resolution (Tr. II:27-28). O'Neal decided with work with Agent Payne and signed an Informant's Agreement (Exhibit 96, A. 134) (Tr. II:27-28). Between January 2011 and June 2012, he received $1500, which included expenses to relocate (Tr. II:28-29).

Before beginning his informant work, O'Neal knew Robinson as a drug dealer (Tr. II:29-30). He engaged in ten purchases at Talu's, including transactions with Jason Roman, Tonia Rawlinson, Richard Marks, and Courtney Desrochers (Tr. II:31-34). He admitted that he also engaged in transactions at Talu's without informing Agent Payne, in violation of his informant agreement (Tr. II:35-36). As a result, he had more charges pending (Tr. II:37). O'Neal admitted that he was testifying in order to help himself (Tr. II:37).

Coconspirators: Two witnesses named in the indictment as coconspirators testified as government witnesses: Jason Roman (Tr. II:54) and Tonia Rawlinson (Tr. II:83).[3] Two other named coconspirators, Richard

---

[3]

On April 4, 2012, Jason Roman plead guilty to four counts of distribution of cocaine base and on September 14, 2012, received 33 months incarceration (See no. 1:11-cr-00147-ML-LDA-3). On January 18, 2012, Tonia Rawlinson plead guilty to one count of conspiracy to distribute cocaine base and four counts of distribution of cocaine base, and and on August 10, 2012, received three years

Marks and Courtney Desrochers, were not witnesses.[4]

Jason Roman grew up with Robinson and worked for him at Talu's (Tr. II:54-56). Roman testified that in 2011, Robinson asked Roman to vouch for O'Neal (Tr. II:58).[5] Roman told Robinson that O'Neal was "cool" (Tr. II:58).

Roman entered into a plea agreement with the government (Exhibit 48, A. 119) (Tr. II:68). He agreed to be truthful and to plead guilty to five counts (Tr. II:68). The government agreed to dismiss one conspiracy count (Tr. II:69). The government further agreed to recommend the lowest sentence under the guidelines (Tr. II:69). Roman also hoped that the government would file an "851" which would remove the mandatory minimum sentence (Tr. II:69). Roman had two prior drug convictions: possession with intent to distribute in 1996, in which he received a sentence of six years, 90 days to serve; and possession of marijuana in 2003, in

---

probation (See no. 1:11-cr-00147-ML-LDA-2).

[4]

On April 5, 2012, Courtney Desrochers plead guilty to one count of distribution of cocaine base and on July 25, 2012, received 12 months incarceration (See no. 1:11-cr-00147-ML-LDA-4). On April 5, 2012, Richard Marks plead guilty to one count of distribution of cocaine based and on July 25, 2012, received 60 months incarceration (See no. 1:11-cr-00147-ML-LDA-5).

[5]

Jason Roman knew Lenneth O'Neal as "O'Cyrus", a name O'Neal also used (Tr. II:26,58).

which he received two years probation (Tr. II:71).

Tonia Rawlinson had three children with Robinson (Tr. II:83). She testified that Robinson asked her to sell drugs with him (Tr. II:85). Rawlinson signed a plea agreement (Exhibit 47, A. 111) (Tr. II:98). She hoped for a favorable sentencing recommendation (Tr. II:99). She hoped that the government would file an "5K" which would remove the mandatory minimum sentence (Tr. II:100).

Rawlinson testified that in March 2012, she received a letter, which she identified as being in Robinson's handwriting (Tr. II:94) (Exhibit 46, A. 108).[6] In the letter, Robinson said that she only faced three to five years and to plead guilty (Tr. II:96). She received a second letter (Tr. II:96) (Exhibit 50, A. 128).[7] In the letter, Robinson asked her to testify that she did not sell drugs for him (Tr. II:97). She received a third letter (Exhibit 51, A. 132) (Tr. II:98).[8] The letter

---

[6]

    The judge overruled Mr. Robinson's objection to the letter on the basis that it was not authenticated (Tr. II:95).

[7]

    The judge overruled Mr. Robinson's objection to the letter on the basis that it was not authenticated (Tr. II:95-96).

[8]

    The judge overruled Mr. Robinson's objection to the letter on the basis that it was not authenticated (Tr. II:96-97).

-16-

read, "Remember what I told you, don't sign no deal" (Tr. II:98).

February to June 2011 (Count 1): Count 1 alleged a conspiracy to distribute 280 grams or more of cocaine base (A. 13). The coconspirators were Robert Robinson, Tonia Rawlinson, Jason Roman, Courtney Desrochers, and Richard Marks (A. 13).

February 16, 2011 (Count 2): At 1:05 p.m., O'Neal entered Talu's (Tr. I:193). He asked Tina Nantais, the bartender, to contact Robinson (Tr. I:193). Robinson arrived about 30 minutes later and took an order for cocaine base from O'Neal (Tr. I:194).

At 2:45 p.m., Tonia Rawlinson arrived at Talu's in a silver Nissan Quest (Tr. I:194). The license plate was registered to a different vehicle, a Lexis owned by Robinson (Tr. I:194-195). Rawlinson gave a package to Jason Roman (Tr. I:195). Roman directed O'Neal to go into the bathroom with him (Tr. I:195). Inside the bathroom, O'Neal gave Roman $1800 for the package (Tr. I:195).

Roman asked O'Neal for a piece of the cocaine base, and O'Neal gave him a small piece (Tr. I:195). Agent Payne later told O'Neal that it was improper for him to do that and he was not permitted to do it again (Tr. I:196). O'Neal told Agent Payne that he gave Roman a

-17-

piece of the cocaine in order to maintain his credibility (Tr. I:196).

Tonia Rawlinson testified that Robinson gave her crack cocaine to give to Roman (Tr. II:86). She went to Talu's and gave it to Roman in exchange for $1800 (Tr. II:85-87). Rawlinson went home and gave the money to Robinson (Tr. II:87).

Roman testified that Rawlinson gave him a package to give to O'Neal (Tr. II:60). Roman gave O'Neal the package in the bathroom in exchange for $1800 (Tr. II:60-61). Roman admitted that he asked O'Neal for a piece of the crack cocaine, which he smoked (Tr. II:62).

O'Neal agreed that he tampered with the drugs that Roman provided (Tr. II:48). Roman asked O'Neal if he could break off a piece, and O'Neal agreed in order to maintain his credibility (Tr. II:50).

After the transaction, O'Neal left the bar and met Agent Payne at a location a few minutes away (Tr. I:61-62). O'Neal gave Agent Payne the package (Tr. I:62) (Exhibit 31). Subsequent chemical testing revealed that the substances contained cocaine base and weighed 49.8 grams (Tr. II:78).

The government introduced a CD audio recording of the transaction (Exhibit 3) and a transcript (Exhibit 3A,

A. 49) (Tr. I:199-200).[9]

February 23, 2011 (Count 3): Agent Payne provided
O'Neal with $1200 (Tr. I:204). At 2:25 p.m., O'Neal
entered Talu's Café (Tr. I:205). At 3:00 p.m., O'Neal
asked the bartender to contact Robinson (Tr. I:205). At
5:30 p.m., Rawlinson entered the bar and gave a package
to Roman (Tr. I:205). Roman entered the bathroom and
placed the package in the trash (Tr. I:205). O'Neal
entered the bathroom, retrieved the package, and placed
$900 in the trash (Tr. I:205). Roman reentered the
bathroom and retrieved the money (Tr. I:205-206).

O'Neal left and met Agent Payne at a rendevous point
where he turned over the package (Tr. I:206) (Exhibit
32).[10] Subsequent testing revealed that the substances
contained cocaine base and weighed 27.12 grams (Tr.
II:21-22).

---

[9]

Mr. Robinson, representing himself with standby
counsel, stated that he was "not prepared to object or
not object because I have not had time to properly
prepare myself for my own defense because the judge has
denied me time to continue this" (Tr. I:200). The judge
instructed the jury to disregard the comment (Tr. I:200).

[10]

At the time the government introduced the package of
cocaine, Mr. Robinson stated, "I'm not prepared to object
or not object because I have not had time to adequately
prepare myself for the defense" (Tr. I:207). The judge
instructed the jury to disregard the comment (Tr. I:207).

Rawlinson testified that Robinson gave her drugs to give to Roman (Tr. II:88). She brought the drugs to Talu's (Tr. II:88). Roman gave the drugs to O'Neal and gave her $900 (Tr. II:89). She went home and gave the money to Robinson (Tr. II:89).

Roman testified that Rawlinson gave him a package of crack cocaine from Robert Robinson (Tr. II:64). Roman left the package in the bathroom trash for O'Neal and told O'Neal to leave the money in the trash (Tr. II:64). Roman collected the money and gave it to Rawlinson (Tr. II:65).

The government introduced a CD audio recording (Exhibit 4) and the transcript (Exhibit 4A, A. 52) (Tr. I:208).[11]

<u>March 9, 2011 (Count 4)</u>: Agent Payne provided O'Neal with $600 (Tr. I:210). O'Neal entered Talu's at 2:14 p.m. (Tr. I:210). Tonia Rawlinson arrived in the Nissan Quest (Tr. I:211). She provided cocaine base to Jason Roman, who  met with O'Neal (Tr. I:211).

O'Neal left and met with Agent Payne (Tr. I:211). O'Neal provided Agent Payne with a package (Tr. I:212)

---

[11]

At the time the government introduced the CD, Mr. Robinson stated that he did not object because he was not prepared (Tr. I:208).

(Exhibit 33).[12] Subsequent chemical testing revealed that the substances contained cocaine base and weighed 12 grams (Tr. II:79).

Rawlinson testified that Robinson gave her crack cocaine to give to Roman, and that she gave the money to Robinson (Tr. II:90). Roman testified that Rawlinson gave him a package of cocaine, which he gave to O'Neal (Tr. II:65). O'Neal paid Roman and Roman gave the money to Rawlinson (Tr. II:65).

The government introduced a CD audio recording (Exhibit 5) and transcript (Exhibit 5A, A. 54) (Tr. I:213-214).[13]

March 22, 2011 (Count 5): Agent Payne gave O'Neal $1000 (Tr. I:215; II:37). O'Neal entered Talu's at 12:21 p.m. (Tr. I:215; II:37). Robinson entered at 1:06 p.m. (Tr. I:216). O'Neal ordered one ounce from Nantais (Tr. I:216; II:38). Rawlinson entered at 1:58 p.m. (Tr. I:216). O'Neal and Rawlinson went out to the Nissan where they discussed the price (Tr. I:216). Rawlinson called

---

[12] At the time the government introduced the package of cocaine, Mr. Robinson stated that he was not prepared to object or not object (Tr. I:212). The judge took the comment as an objection and overruled it (Tr. I:212-213).

[13] The judge overruled Mr. Robinson's objection to the CD (Tr. I:213).

-21-

Robinson and obtained price of $850 (Tr. I:216-217). Rawlinson testified that Robinson gave her the cocaine to give to O'Neal (Tr. II:91). O'Neal purchased the cocaine from Rawlinson (Tr. I:217).

O'Neal met Agent Payne and turned over the package (Exhibit 34) (Tr. I:217-218).[14] Subsequent testing revealed that the package contained cocaine base and weighed 24.9 grams (Tr. II:217-218).

The government introduced a CD audio recording (Exhibit 6) and transcript (Exhibit 6A, A. 56) (Tr. I:219).[15] The government introduced T-Mobile telephone records of Robinson's telephone (Exhibit 54) (Tr. I:222).[16] The government introduced a video of surveillance of the exterior of Talu's (Exhibit 7) (Tr. I:226).[17] The video showed Robinson entering and leaving Talu's (Tr. I:227).

---

[14]

The judge overruled Mr. Robinson's objection to the package of cocaine (Tr. I:218).

[15]

The judge overruled Mr. Robinson's objection to the CD (Tr. I:219).

[16]

The judge overruled Mr. Robinson's objection to the telephone records (Tr. I:222).

[17]

The judge overruled Mr. Robinson's objection to the video (Tr. I:226).

<u>March 29, 2011 (Count 6)</u>: Agent Payne gave O'Neal $900 (Tr. I:231). At 7:36 p.m., O'Neal entered Talu's (Tr. I:232). Robinson arrived at 8:15 p.m. (Tr. I:232). Robinson gave Roman an ounce of cocaine, and Roman gave it to O'Neal (Tr. I:232). O'Neal gave Roman $850 (Tr. I:232). O'Neal left Talu's and met with Agent Payne (Tr. I:232). He gave the package to Agent Payne (Tr. I:232-233). (Exhibit 35).[18] Subsequent testing revealed that the substances contained cocaine base and weighed 24.9 grams (Tr. II:79-80).

Roman testified that Robinson entered the bar and gave him a package, which Roman gave to O'Neal in exchange for $850 (Tr. II:66). Roman gave the money to Robinson (Tr. II:66).

The government introduced a CD audio recording (Exhibit 8) and transcript (Exhibit 8A, A. 60) (Tr. I:234).[19] The government introduced a video of surveillance of Talu's (Exhibit 9) (Tr. I:235).[20] The

---

[18] The judge overruled Mr. Robinson's objection to the package of cocaine (Tr. I:233).

[19] The judge overruled Mr. Robinson's objection to the CD (Tr. I:234).

[20] The judge overruled Mr. Robinson's objection to the video (Tr. I:236).

-23-

video showed Mr. Robinson entering Talu's at 8:15 p.m and leaving at 8:18 p.m. (Tr. I:236).

   April 14, 2011 (Count 7): Agent Payne provided O'Neal with $900 (Tr. I:238-239). O'Neal entered Talu's at 8:05 p.m. (Tr. I:239). O'Neal asked Courtney Desrochers to contact Robinson (Tr. I:239). Robinson arrived at 9:20 p.m. (Tr. I:239). In the bathroom, Desrochers gave O'Neal one ounce of cocaine base in exchange for $850 (Tr. I:240; II:42). Desrochers left the bathroom and gave the money to Robinson (Tr. I:240).

   O'Neal left and met with Agent Payne (Tr. I:241). He gave Agent Payne the cocaine (Exhibit 36) (Tr. I:241).[21] Subsequent testing revealed that the substances contained cocaine based and weighed 26.22 grams (Tr. II:23).

   The government introduced a CD audio recording (Exhibit 10) and transcript (Exhibit 10A, A. 62) (Tr. I:242).[22] The government introduced a CD of video surveillance of Talu's (Exhibit 12) (Tr. I:244).[23] The

---

[21]

   The judge overruled Mr. Robinson's objection to the package of cocaine (Tr. I:241-242).

[22]

   The judge overruled Mr. Robinson's objection to the CD (Tr. I:242).

[23]

   The judge overruled Mr. Robinson's objection to the video  (Tr. I:245).

-24-

video showed Robinson entering Talu's (Tr. I:245).

April 21, 2011 (Count 8): Agent Payne gave O'Neal $900 (Tr. I:247). At 12:50 p.m., O'Neal went to Talu's (Tr. I:247). Robinson went to the bar and gave Richard Marks one ounce of cocaine (Tr. I:248). In the bathroom, Marks sold the cocaine to O'Neal (Tr. I:248; II:42-43). Marks left the bathroom, but returned and told O'Neal that he owed Mr. Robinson another $100 (Tr. I:248). O'Neal gave Marks $100 (Tr. I:248).

O'Neal left the bar and gave Agent Payne the package (Tr. I:249) (Exhibit 37).[24] Subsequent testing revealed that the substances contained cocaine base and weighed 26.6 grams (Tr. II:81).

The government introduced a CD audio recording of transaction (Exhibit 13) and transcript (Exhibit 13A, A. 64) (Tr. I:250).[25] The government introduced a video of surveillance of Talu's (Exhibit 14).[26] The video shows Robinson entering at 3:13 p.m. and then leaving Talu's at

---

[24]
    The judge overruled Mr. Robinson's objection to the package of cocaine (Tr. I:249).

[25]
    The judge overruled Mr. Robinson's objection to the CD (Tr. I:250).

[26]
    The judge overruled Mr. Robinson's objection to the video (Tr. I:252).

3:17 p.m. (Tr. I:252).

May 5, 2011 (Count 9): Agent Payne provided O'Neal with $1400 (Tr. I:254). At 12:30 p.m., O'Neal went to Talu's (Tr. I:254). Robinson entered at 12:49 p.m. and stayed for three minutes (Tr. I:254). Robinson returned at 1:15 p.m. and stayed for six minutes (Tr. I:255). O'Neal gave Mr. Robinson $1400 for one and one-half ounces of cocaine (Tr. I:255; II:43) (Exhibit 38).[27] Subsequent testing revealed that the substances contained cocaine base and weighed 39.7 grams (Tr. II:77-78).

The government introduced a CD audio recording (Exhibit 15) and transcript (Exhibit 15A, A. 69) (Tr. I:257).[28] The government introduced a video of surveillance of Talu's (Tr. I:260).[29] The video showed Mr. Robinson entering and leaving Talu's (Tr. I:260).

May 17, 2011 (Count 10): O'Neal entered Talu's at 11:35 p.m. (Tr. I:263). Robinson arrived at 1:38 p.m. and departed at 1:41 p.m. (Tr. I:263-264). Inside Talu's,

---

[27]

The judge overruled Mr. Robinson's objection to hearsay by the informant (Tr. I:256).

[28]

The judge overruled Mr. Robinson's objection to the CD (Tr. I:257).

[29]

The judge overruled Mr. Robinson's objection to the video (Tr. I:260).

Robinson provided Roman with one and one-half ounces of cocaine base (Tr. I:264). Roman gave it to O'Neal for $1500 (Tr. I:264).

Roman testified that Robinson entered the bar and gave him a package, which Roman gave to O'Neal in exchange for $1500 (Tr. II:67). Roman gave the money to Robinson (Tr. II:67).

O'Neal left Talu's and gave Agent Payne the cocaine (Tr. I:264-265) (Exhibit 39).[30] Subsequent testing revealed that the substances contained cocaine base and weighed 34.1 grams (Tr. II:80).

The government introduced a CD audio recording (Exhibit 19) and transcript (Exhibit 19A, A. 71) (Tr. I:266).[31] The government introduced a video of surveillance of Talu's (Exhibit 21) (Tr. I:267).[32] The video showed Mr. Robinson arriving at 1:38 p.m., and leaving at 1:41 p.m. (Tr. I:267).

June 2, 2011 (Count 11): Agent Payne provided O'Neal

---

[30]
The judge overruled Mr. Robinson's objection to the cocaine (Tr. I:265).

[31]
The judge overruled Mr. Robinson's objection to the CD (Tr. I:266).

[32]
The judge overruled Mr. Robinson's objection to the video (Tr. I:268).

with $1400 to purchase one and one-half ounces of cocaine base (Tr. I:269). He also provided O'Neal with a video recording device (Tr. I:269). O'Neal entered Talu's at 1:00 p.m. (Tr. I:270). Robinson arrived at 1:30 p.m. (Tr. I:270). Robinson told the O'Neal he would return in one hour (Tr. I:271). O'Neal left Talu's and Agent Payne replaced the batteries on the video recording device (Tr. I:271). O'Neal returned to Talu's at 2:32 p.m. (Tr. I:271). Robinson returned at 3:38 p.m. and made the transaction with O'Neal (Tr. I:271).

O'Neal later provided the cocaine to Agent Payne (Tr. I:276-277) (Exhibit 40).[33] Subsequent testing revealed that the substances contained cocaine base and weighed 37.14 grams (Tr. II:24-25).

The government introduced a CD of audio-video (Exhibit 23) (Tr. I:272-273).[34] The government introduced a video of surveillance of Talu's (Tr. I:278) (Exhibit 24).[35] The video showed Robinson arriving at Talu's and

---

[33]

    The judge overruled Mr. Robinson's objection to the cocaine (Tr. I:277).

[34]

    The judge overruled Mr. Robinson's objection on the basis that the video was not authenticated (Tr. I:274).

[35]

    The judge overruled Mr. Robinson's objection on the basis that the video was not authenticated (Tr. I:278).

then departing (Tr. II:4-5).

Interview with Robert Robinson: On June 10, 2011, agents arrested Robinson and transported him to the Woonsocket Police Department (Tr. I:280). After receiving his Miranda rights and signing a waiver (Exhibit 45), Robinson agreed to speak to Agent Payne (Tr. I:280-281). During the interview, Robinson said that he was a drug dealer (Tr. I:248). Agent Payne asked Robinson how much a kilo cost, and Robinson wrote "24" on a notepad (Exhibit 44, A. 106), which Agent Payne took to mean $24,000 (Tr. I:284, 288). When asked about his supplier, Robinson wrote on the notepad, "Hector is Bono supplier" (Tr. I:285, 288).[36] Robinson said that he had traded a Cadillac in Mexico for narcotics (Tr. I:285).

The government introduced a CD of the interview with Robinson (Exhibit 28) and a transcript (Exhibit 28A, A. 76) (Tr. I:291).[37]

---

[36]

    The judge overruled Mr. Robinson's objection to the notepad, on the basis that it was not his handwriting (Tr. I:286).

[37]

    The judge overruled Mr. Robinson's objection to the recording on the basis that it was not authenticated (Tr. I:291).

**Sentencing**:

Presentence Report:[38]   Pursuant    to    U.S.S.G.
2D1.1(c)(4), the Presentence Report (PSR) calculated the
base offense level to be 32 (PSR ¶19). Pursuant to
U.S.S.G. 2D1.1(b)(14)(D) and 3B1.1, the PSR added two
levels for engaging in witness intimidation, based on the
letters written to Tonia Rawlinson (PSR ¶20). Pursuant to
U.S.S.G. 3B1.1(a), the PSR added four levels on the basis
that Robinson was a leader of a drug conspiracy involving
five or more persons (PSR ¶21). The PSR calculated the
total offense level to be 38 (PSR ¶27). The PSR
calculated a criminal history category of III, based on
3 criminal history points (PSR ¶¶34-35). The guideline
range was 292-365 months (PSR ¶71).

Pursuant to 21 U.S.C. 841(a)(1) and (b)(1)(A), the
mandatory minimum is 20 years with a maximum term of life
(PSR ¶70). Pursuant to 21 U.S.C. 841(a)(1) and (b)(1)(B),
the mandatory minimum is five years with a maximum of 40
years (PSR ¶70).

Government's recommendation: The government
recommended that the court follow the guidelines and
impose a sentence of 292 months (Document 147, pp. 2,
15). The government recommended an increase of two levels

---

[38]    The Presentence Report is filed under seal.

based on  the obstruction of justice, and four levels for being a leader of the drug conspiracy (Document 147, pp. 8-12) (Tr. II:219-222).

Defendant's    recommendation:    The    defendant (represented at the sentencing hearing by Attorney Smith) recommended that the court sentence him to the statutory mandatory minimum of 20 years (Document 155, p. 12).[39] On the probation revocation, the defendant recommended a concurrent sentence (Document 155, p. 12) (Tr.  II:222-225).

Sentence:  The  court  imposed  a  sentence  of   240 months (20 years) incarceration on Counts 1-11, to run concurrently  with  each  other  (A.  11,  32)  (Tr. II:225-230). The court further ordered supervised release for 10 years on Count 1;  5 years supervised release on Counts 2-11; and a special assessment of $1,100 (A. 11, 33-35). On the probation matter, the court sentenced Mr. Robinson to  24 months imprisonment to run consecutively to the term  imposed  on  no.  1:11-cr-00147  (A.  42,  47)  (Tr. II:229).

---

[39]
    21  U.S.C.  841(b)(1)(A)(iii)  carries  a  minimum
mandatory sentence of twenty years where the weight of
the cocaine base exceeds 280 grams and the defendant has
prior felony drug offense.

**ARGUMENT SUMMARY**

The district court deprived Robert Robinson of his Sixth Amendment right to counsel. First, on the day of impanelment, the court refused to permit a continuance to allow Mr. Robinson time to obtain substitute counsel after he informed the court of a breakdown in communications with his lawyer (pages 32-39). Second, when Mr. Robinson informed the court that he intended to represent himself at trial, the judge permitted him to do so without first conducting an adequate inquiry into the the intelligent and knowing nature of his decision. The record does not demonstrate that Mr. Robinson was fully aware of the disadvantages of self-representation (page 39-48). The remedy for the violation of his constitutional right to counsel is a new trial, because the error is structural without a need to establish non-harmless error (pages 48-50).

**ARGUMENT**

I.    **THE DISTRICT COURT DEPRIVED ROBERT ROBINSON OF HIS CONSTITUTIONAL RIGHT TO COUNSEL BY (A) REFUSING TO ALLOW A CONTINUANCE TO OBTAIN NEW COUNSEL; AND (B) PERMITTING HIM TO REPRESENT HIMSELF WITHOUT AN ADEQUATE INQUIRY.**

A.    **The district court abused its discretion by refusing to permit a continuance to allow the defendant to secure new counsel.**

-32-

Standard of review: The appellate court reviews a trial judge's denial of the defendant's motion for substitution of counsel for abuse of discretion. <u>United States</u> v. <u>Proctor</u>, 166 F.3d 396, 401 (1st Cir.1999); <u>United States</u> v. <u>Woodard</u>, 291 F.3d 95, 106 (1st Cir. 2002).

Discussion: "In all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. <u>United States</u> v. <u>Gonzalez-Lopez</u>, 548 U.S. 140, 144 (2006). An element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him. <u>Id</u>. Representation by counsel is a right of the highest order. <u>United States</u> v. <u>Woodard</u>, <u>supra</u> at 106. Of course, that right is not absolute.  <u>Wheat</u> v. <u>United States</u>, 486 U.S. 153, 159 (1988); <u>United States</u> v. <u>Maldonado</u>, 708 F.3d 38, 42 (1st Cir. 2013). It is within the district court's discretion to force a defendant to choose between proceeding to trial with an unwanted attorney and representing himself. <u>United States</u> v. <u>Woodard</u>, <u>supra</u> at 106.

In weighing the defendant's right to choose his own counsel, the appellate court considers its impact on reasonable and orderly court procedure. <u>United States</u> v.

-33-

_Woodard_, 291 F.3d at 106, citing  _United States_ v.
_Poulack_, 556 F.2d 83, 86 (1st Cir.1977).  A defendant has
no right to representation by a particular attorney when
such representation would require undue delay. _Id_.,
citing _United States_ v. _Hallock_, 941 F.2d 36, 44 (1st
Cir.1991). Thus, when a defendant seeks new counsel, the
court must balance his interest in retaining counsel of
his choice against the public's interest in the prompt,
fair and ethical administration of justice. _Id_., citing
_United States_ v. _Richardson_, 894 F.2d 492, 496 (1st
Cir.1990). "Only an unreasoning and arbitrary insistence
upon expeditiousness in the face of a justifiable request
for delay violates the right to the assistance of
counsel." _Id_., quoting  _Morris_ v. _Slappy_, 461 U.S. 1,
11-12 (1983).

    In _United States_ v. _Allen_, 789 F.2d 90, 92 (1st Cir.
1986), this Court set forth the principles governing
cases in which a criminal defendant asks that appointed
counsel be replaced. When a defendant voices objections
to counsel, the trial court should inquire into the
reasons for the dissatisfaction. _Id_. In evaluating
whether a district court's denial of motion for
substitution of counsel constituted an abuse of
discretion, the appellate court considers the following

-34-

factors: the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. Id.

The present case involves the defendant's request to replace retained, not appointed counsel. In United States v. Woodard, this Court questioned the applicability of the Allen factors to a situation in which the defendant was represented by retained counsel, and thus was not dependent on the court's permission to replace counsel. United States v. Woodard, supra at 107. See also United States v. Maldonado, supra at 44. Nonetheless, the courts in these circumstances have applied the Allen factors. See United States v. Woodard, supra at 107-108; United States v. Maldonado, supra at 44; United States v. Gaffney, 469 F.3d 211, 217 (1st Cir. 2006).

According to the docket entries, Mr. Robinson hired his first attorney, Attorney Steven DiLibero, in June 2011, and moved to dismiss him in August 2011. The court continued the matter for two months in order to allow Mr. Robinson to hire new counsel, and in October 2011, Attorney Smith filed his appearance. The time period between Mr. Robinson's first and second retained

-35-

attorneys was thus only two months, and did not result in an undue delay of the trial.

As noted above, after Attorney Smith's appearance, the district court ordered a series of continuances from October 2011 to June 2012 (see pages 6-8, supra). Every prior motion to continue was either not at his request or was assented to by the government. Mr. Robinson made his first request for a continuance on the first day the case was scheduled for impanelment, and prior to impanelment. Mr. Robinson's request was thus not yet another in a number of requests to delay the trial. Contrast Maldonado, supra at 42-43. [defendant had already received nine continuances]. Attorney Smith was Mr. Robinson's second attorney. Contrast Maldonado, supra at 40. [defendant already had five lawyers]. Also, although the matter was on for impanelment, the first day of witness testimony was not scheduled to begin until June 18, 2012.

The defendant recognizes that last minute requests for continuances are disfavored. See United States v. Panzardi Alvarez, 816 F.2d 813, 816 (1st Cir. 1987); Tuitt v. Fair, 822 F.2d 166, 171 (1st Cir. 1987); United States v. Richardson, 894 F.2d at 496; United States v. Woodard, supra at 111. But while the defendant did make

-36-

the request on the first day of impanelment, it was the first time the matter was on for impanelment, the first unassented request for a continuance, prior to impanelment, and prior to the scheduled first day of witness testimony. Thus there is no showing that a continuance would have created an undue delay, or unduly hindered the fair, efficient and orderly administration of justice. <u>Woodard</u>, 291 F.3d at 106; <u>Panzardi Alvarez</u>, 816 F.2d at 816.

Mr. Robinson informed Judge Lisi that he no longer wished to be represented by Attorney Smith because "we're not agreeing on anything" (Tr. I:42). He stated that Attorney Smith was not keeping him informed of the motions he filed or everything that was happening (Tr. I:43). He stated that he did not believe Attorney Smith was working for him, and that he did not want to proceed with a lawyer who he did not trust (Tr. I:43-44). He argued that his attorney should have filed additional motions to suppress evidence and statements to law enforcement (Tr. I:47-48).

Attorney Smith informed Judge Lisi of his communications with Mr. Robinson and his provision of discovery (Tr. I:49-50). Attorney Smith said he was ready for jury selection, but also informed the judge that Mr.

-37-

Robinson did not wish to proceed (Tr. I:54).

Mr. Robinson repeated to Judge Lisi that he did not wish to be represented by Attorney Smith, and that he believed he was being "forced" into going to trial (Tr. I:55). He stated, "I refuse to be in the court at this time and to go through with this process. I feel like I'm being forced into doing it" (Tr. I:58-59).

The denial of a defendant's right to choose his own counsel jeopardizes his Sixth Amendment guarantees because "a substantial risk [arises] that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut." United States v. Panzardi Alvarez, 816 F.2d 813, 816 (1st Cir. 1987). The Sixth Amendment right to counsel requires courts to pay considerable deference to a criminal defendant's actual choice of counsel. Id. When a defendant attempts to substitute counsel at the eleventh hour, he must show good cause such as a conflict of interest, a breakdown in communication or an irreconcilable dispute with his attorney. Id.

Mr. Robinson's assertions demonstrate a total breakdown in communication and an irreconcilable dispute with his attorney. The district court's refusal to continue the matter to allow Mr. Robinson the opportunity

to obtain substitute counsel was an abuse of discretion. As will be discussed further below, a violation of the right to counsel is a structural error without a requirement to show prejudice.

**B.     The district court denied the defendant his right to counsel by permitting him to represent himself without first conducting an adequate inquiry into the intelligent and knowing nature of his decision.**

Standard of review: The appellate court reviews the district court's decision that a defendant may proceed pro se for abuse of discretion. United States v. Woodard, 291 F.3d at 109; United States v. Proctor, 166 F.3d at 401; United States v. Manjarrez, 306 F.3d 1175, 1179 (1st Cir. 2002); United States v. Francois, __ F.3d __ (1st Cir., No. 11-2195, 4/22/2013), slip op. at 5.

Discussion: On June 18, 2012, after the completion of impanelment and before opening statements, Mr. Robinson informed Judge Lisi that he had fired Attorney Smith, and that he intended to represent himself (Tr. I:142). The judge permitted Mr. Robinson to represent himself for the duration of the trial. The judge's allowance of his pro se representation denied Mr. Robinson his Sixth Amendment right to counsel.

A criminal defendant has a Sixth Amendment right to

-39-

reject appointment of counsel and to conduct his own
defense, provided that he makes his choice knowingly and
intelligently. United States v. Manjarrez, 306 F.3d at
1179, citing Faretta v. California, 422 U.S. 806, 835,
(1975). When a judge permits a defendant to represent
himself, she must first warn him of the pitfalls of self-
representation. Faretta v. California, 422 U.S. at 835
(1975). A defendant who seeks to relinquish his right to
counsel must so state in unequivocal language. United
States v. Woodard, 291 F.3d at 109, citing Faretta, supra
at 835. The waiver must be knowing, intelligent and
voluntary. United States v. Woodard, 291 F.3d at 109,
citing United States v. Proctor, supra at 401. The trial
judge must explicitly make the defendant "aware of the
dangers and disadvantages of self-representation, so that
the record will establish that he knows what he is doing
and his choice is made with eyes open." United States v.
Woodard, 291 F.3d at 109, quoting Faretta, 422 U.S. at
835. See also United States v. Kneeland, 148 F.3d 6, 11
(1st Cir. 1998); United States v. Francois, __ F.3d __
(1st Cir., No. 11-2195, 4/22/2013), slip op. at 6.

Moreover, "[c]ourts must indulge in every reasonable
presumption against waiver of the right to counsel."
United States v. Woodard, 291 F.3d at 109, quoting

-40-

Proctor, supra at 401. See also Brewer v. Williams, 430
U.S. 387, 404 (1977) [courts should honor "every
reasonable presumption against waiver" of the right to
counsel]; United States v. Bettancourt-Arretuche, 933
F.2d 89, 92 (1st Cir. 1991).

This Court has not prescribed a specific warning for
the trial court or a formulaic waiver for the defendant.
United States v. Manjarrez, 306 F.3d at 1179. The Court
has instead adopted a more contextual inquiry for
determining the legitimacy of a defendant's waiver of
counsel. Id. The Court has enumerated several factors,
including "a sense of the magnitude of the undertaking
and the disadvantages of self-representation: an
awareness that there are technical rules governing the
conduct of a trial, and that presenting a defense is not
a simple matter of telling one's story. In addition, the
accused should have a general appreciation of the
seriousness of the charge and the penalties he may be
exposed to before deciding to take a chance on his own
skill." United States v. Manjarrez, 306 F.3d at 1179,
quoting Maynard v. Meachum, 545 F.2d 273, 279 (1st Cir.
1976). In addition, the district court may consider the
defendant's background, experience, involvement in
previous criminal trials, his representation by counsel

before trial, and the continued presence of advisory counsel at trial. United States v. Manjarrez, 306 F.3d at 1179, citing United States v. Campbell, 874 F.2d 838, 845 (1st Cir.1989).

Despite Mr. Robinson's representation by retained, not appointed counsel, the Faretta rule must still apply, because he was left to represent himself without an adequate inquiry to advise him of the pitfalls of self-representation. This is because "[t]he constitutional right of self-representation necessarily entails a waiver of the constitutional right to be represented by counsel." United States v. Betancourt-Arretuche, 933 F.2d 89, 92 (1st Cir. 1991), quoting Tuitt v. Fair, 822 F.2d 166, 174 (1st Cir. 1987). The waiver must be clear and unequivocal; otherwise, a court should not deprive a defendant of his right to counsel. Betancourt-Arretuche, supra at 92.

Here, the judge did not conduct an adequate Faretta inquiry. The inquiry regarding Mr. Robinson's decision to represent himself is as follows:

THE COURT: We're going to proceed. Mr. Smith can either represent you or if you insist on proceeding pro se -- I mean, you have no training in the law, do you?

MR. ROBINSON: No, your Honor.

-42-

THE COURT: No. I think you are making a huge mistake to proceed pro se since you are not trained in the law.

MR. ROBINSON: I feel I would represent myself better than Attorney Smith because I don't trust him.

THE COURT: All right. So you're prepared to go forward today representing yourself, and Mr. Smith can be your standby counsel.

MR. ROBINSON: I refuse to have Mr. Smith as my standby counsel.

THE COURT: Well, I'm going to insist that he remain as your standby counsel so that you have someone at the table who can advise you as to the rules of evidence and that sort of thing. Otherwise you're going to be walking into a land mine because you don't know the rules.

MR. ROBINSON: Its also my right to choose my own attorney or choose an assistant.

THE COURT: Not on the day of trial, Mr. Robinson.

MR. ROBINSON: Well, you forced me to go into this trial.

THE COURT: No, I did not, Mr. Robinson.

MR. ROBINSON: Yes, you did.

(Tr. I:144-145).

There was no further inquiry in which the judge explicitly made Mr. Robinson aware of the dangers and

-43-

disadvantages of self-representation, so that the record established that he knew what he was doing and his choice was "made with eyes open." United States v. Woodard, 291 F.3d at 109, quoting Faretta, 422 U.S. at 835. The judge did not advise him of the seriousness of the charges and the penalties he faced. Contrast Woodard, supra at 109; Manjarrez, supra at 1180 [judge "exhaustively questioned the defendant to ensure that he understood not only the gravity of the charges facing him and their potential penalties upon conviction, but also his obligation to comply with the rules of the court when presenting his case"]. She did not describe "various substantive and procedural aspects of the trial, including...the government's burden of proof, opening and closing arguments, questioning of witnesses, the concept of reasonable doubt..." Contrast Woodard, supra at 109.

While the judge did warn Mr. Robinson that he was making a "huge mistake" and that he was "walking into a land mine", she did not warn him of the "dire consequences" of self-representation. Contrast Manjarrez, supra at 1180. Nor did she "repeatedly invite him to reconsider his decision." Id. There was also no showing that Mr. Robinson had any experience to prepare him to represent himself. Contrast United States v. Campbell,

874 F.2d 838, 846 (1989) [self-representation upheld when defendant was a lawyer who had tried numerous cases]; United States v. Kneeland, 148 F.3d at 12 [defendant was a disbarred attorney]; United States v. LaBare, 191 F.3d 60, 68 (1st Cir.1999) [defendant had experience in previous criminal trials].

The recent holding in United States v. Francois, __ F.3d __ (1st Cir., No. 11-2195, 4/22/2013), must not alter the conclusion that Mr. Robinson did not receive an adequate Faretta warning. The defendant in Francois also claimed on appeal that his decision to waive his right to counsel was not intelligent because the trial judge did not warn him of the consequences of proceeding pro se. Id., slip op. at 5.

The court in Francois, while ultimately holding that the Faretta warning was adequate, acknowledged that the warning was "less thorough than it might be". Id. The trial judge in Francois did not go beyond "dire generalizations" [warning that self-representation was a "terrible idea" and a "catastrophic mistake"] to give a specific example of the consequences of self-representation that might enhance a layman's understanding of the significance of the decision to proceed without counsel. Id., slip op. at 6. The court

-45-

found that phrases like "catastrophic mistake" do not
convey in concrete terms the sentencing range the
defendant would likely face if he were convicted. Id. The
judge also did not explain that the defendant might have
defenses that only a lawyer would appreciate, or that
could not give advice or guidance during the trial. Id.

But despite a warning that was less thorough than it
preferred, the court held that "the record amply supports
the lower court's conclusion that [the defendant] was
fully aware of the disadvantages he would face as a pro
se defendant." Id., slip op. at 7, quoting United States
v. Kneeland, supra at 12.

The court cited the pretrial record, which
demonstrated that the defendant was actively involved in
preparing for his own defense. Id. At the hearings on his
many pre-trial motions, the court engaged the defendant
in several lengthy discussions, and during each of these
discussions, he was lucid, articulate, and engaged. Id.
The defendant made arguments on his own behalf
demonstrating that he had conducted extensive legal
research of his own accord and was fully aware of the
nature of the charges against him. Id. The record of the
pre-trial proceedings showed that he received advice
regarding potential sentences from his counsel. Id. The

trial judge explained that the federal sentencing calculations were complicated and reiterated several times that it was critical that he give careful consideration to his attorney's assessment of the possible sentences he could face. Id.

By contrast, the record in the present case does not demonstrate that Mr. Robinson was fully aware of the disadvantage of self-representation. Unlike the defendant in Francois, Mr. Robinson was not actively involved in his defense. Nor did he make arguments demonstrating any legal acumen. The record also does not demonstrate that he received advice regarding the potential sentence.

Therefore, this case presents a situation in which (a) the Faretta warning was less thorough than this Court considers adequate; and (b) the record fails to support the conclusion that the defendant was fully aware of the advantages he would face as a pro se defendant.

The inquiry was thus inadequate to ensure that Mr. Robinson's waiver of counsel was knowingly and intelligently made. This Court has noted its "obligation...to indulge in every reasonable presumption against a waiver" of the defendant's right to counsel. Proctor, supra at 405, quoting Brewer, 430 U.S. at 404. The Court must therefore find that the defendant's

-47-

decision to represent himself was not intelligently made following an adequate inquiry, and thus the district court's decision to allow his pro se representation was an abuse of discretion.

Mr. Robinson's lack of preparedness was evident throughout the trial. He was unable to deliver a proper opening statement without the judge sustaining the government's objections (Tr. I:180). His cross-examination of Agent Payne inquired into whether Lenneth O'Neal tampered with the drugs, but otherwise was an ineffective examination riddled with sustained objections (Tr. II:10-18). His cross of O'Neal failed to inquire into the bias of a cooperating witness who was seeking favor with the government on pending criminal charges (Tr. II:48). His cross of Jason Roman, who was also charged in the conspiracy, also failed to inquire into bias for similar reasons (Tr. II:72). He was not able to conduct an effective cross of Tonia Rawlinson (Tr. II:100-102). He did not conduct any cross of the chemists who tested the substances, Michael Liberto or Reena Patel (Tr. II:25,82). His closing argument was also filled with sustained objections, mostly for stating facts that were not in evidence (Tr. II:135-148).

But a defendant in this circumstances does not need

to demonstrate non-harmless error. A violation of the Sixth Amendment right to counsel is not subject to harmless error review and requires a new trial. United States v. Proctor, 166 F.3d at 406 n. 13, citing United States v. Mateo, 950 F.2d 44, 48 n. 8 (1st Cir.1991). There is no requirement to show prejudice. United States v. Betancourt-Arretuche, 933 F.2d at 94, citing Flanagan v. United States, 465 U.S. 259, 268 (1984). "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8 (1984). Thus as a result of the violation of his Sixth Amendment right to counsel, Mr. Robinson must be afforded a new trial.

With respect to the court's revocation of Mr. Robinson's probation on no. 1:01-cr-00103, the defendant asserts that because the revocation was based on his conviction on no. 1:11-cr-00147 (see Report and Recommendation (no. 1:01-cr-00103, Document 20), this Court should vacate the order of revocation pending the resolution of a new trial on no. 1:11-cr-00147.

-49-

## CONCLUSION

For all the above-stated reasons, the defendant respectfully requests that this Honorable Court reverse the convictions and remand for a new trial on no. 1:11-cr-00147; and vacate the order of revocation on no. 1:01-cr-00103.

                              ROBERT O. ROBINSON
                              By his attorney:


                              */s/ Kenneth Seiger*
                              Kenneth Seiger
                              P. O. Box 470725
                              Brookline, MA 02447
                              617-277-8544
                              Court No. 19781
                              Kenneth.seiger@gmail.com


## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because the brief contains 9,851 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because the brief has been prepared in a monospaced typeface using Courier New 12.

                              */s/ Kenneth Seiger*
                              Kenneth Seiger

                    -50-

## CERTIFICATE OF SERVICE

I certify that on May 23, 2013, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties are registered as ECF filers and that they will be served by the CM/ECF system:

Donald Lockhart, AUSA
United States Attorney's Office
50 Kennedy Plaza
8th Floor
Providence, RI 02903-0000


*/s/ Kenneth Seiger*
Kenneth Seiger

**<u>ADDENDUM</u>**

Judgment (no. 1:11-cr-00147)..................Addendum 1

Judgment (no. 1:01-cr-00103)..................Addendum 8

AO 245B     (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| v. | ) | |
| **Robert O. Robinson** | ) | Case Number:  **1:11CR00147-01ML** |
| | ) | USM Number:  **05065-070** |
| **a/k/a "Robbie"** | ) | **Matthew B. Smith, Esq.** |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☑ was found guilty on count(s)     I - XI of the Indictment
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. §§ 841(a)(1),(b) (1)(A)(iii) and 18 U.S.C. § 2 | Conspiracy to Possess with Intent to Distribute and Distribution of 280 grams or more of a mixture containing Cocaine Base; Aiding & | June 2011 | I |
| 21 U.S.C. §§  841(a)(1),(b) (1)(B)(iii) and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of 28 Grams or more of a mixture containing Cocaine Base; Aiding & Abetting | February 16, 2011 | II |
| 21 U.S.C. §§  841(a)(1),(b) (1)(C), and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of a mixture containing a detectable amount of Cocaine Base; Aiding & Abetting | February 23, 2011 | III |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____  ☐ is   ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 31, 2012
Date of Imposition of Judgment

*Mary M. Lisi*
Signature of Judge

Mary M. Lisi
Chief Judge
Name and Title of Judge

*November 5, 2012*
Date

**Addendum 1**

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
         Sheet 1A

| | |
|---|---|
| DEFENDANT: Robert O. Robinson | Judgment—Page __2__ of __7__ |
| CASE NUMBER: 1:11CR00147-01ML | |

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of a mixture containing a detectable amount of Cocaine Base; Aiding & Abetting | March 9, 2011 | IV |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of a mixture containing a detectable amount of Cocaine Base; Aiding & Abetting | March 22, 2011 | V |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of a mixture containing a detectable amount of Cocaine Base; Aiding & Abetting | March 29, 2011 | VI |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of a mixture containing a detectable amount of Cocaine Base; Aiding & Abetting | April 14, 2011 | VII |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of a mixture containing a detectable amount of Cocaine Base; Aiding & Abetting | April 21, 2011 | VIII |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of 28 Grams or more of a mixture containing Cocaine Base; Aiding & Abetting | May 5, 2011 | IX |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of 28 Grams or more of a mixture containing Cocaine Base; Aiding & Abetting | May 17, 2011 | X |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), and 18 U.S.C. § 2 | Possession with Intent to Distribute and Distribution of 28 Grams or more of a mixture containing Cocaine Base; Aiding & Abetting | June 2, 2011 | XI |

**Addendum 2**

AO 245B     (Rev. 09/08) Judgment in Criminal Case
           Sheet 2 — Imprisonment

Judgment — Page    3    of     7

DEFENDANT: **Robert O. Robinson**
CASE NUMBER: **1:11CR00147-01ML**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**240 months to Counts I-XI to be served concurrently with each other.**

☐   The court makes the following recommendations to the Bureau of Prisons:

☑   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

     ☐   at  _____   ☐ a.m.   ☐ p.m.   on  _____ .

     ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐   before 2 p.m. on  _____ .

     ☐   as notified by the United States Marshal.

     ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on    _12/26/12_    to _SCH_

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**Addendum 3**

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | |
|---|---|
| DEFENDANT:  Robert O. Robinson | Judgment—Page   4   of   7 |
| CASE NUMBER:  1:11CR00147-01ML | |

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

**10 years as to Count I; 5 years as to Counts II-XI; all counts to run concurrently with each other.**

　　　The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐　The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑　The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑　The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐　The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐　The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

　　　If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

　　　The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without permission of the court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4) the defendant shall support his or her dependants and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

---

## FOR OFFICIAL USE ONLY - US PROBATION OFFICE

--------------------------------------------------------------------------------

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or (3) modify the conditions of supervision.
These conditions have been read to me. I fully understand them and have been provided a copy.

(Signed)

| | |
|---|---|
| _____ | _____ |
| Defendant | Date |
| _____ | _____ |
| US Probation Officer/Designated Witness | Date |

## Addendum 4

Case 1:11-cr-00147-ML-LDA   Document 164   Filed 11/07/12   Page 5 of 7 PageID #: 614

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 3C — Supervised Release

DEFENDANT: **Robert O. Robinson**
CASE NUMBER: **1:11CR00147-01ML**

Judgment—Page ___5___ of ___7___

## SPECIAL CONDITIONS OF SUPERVISION

In addition, the defendant shall comply with the following special condition(s):

1. The defendant is to participate in a program of mental health treatment as directed and approved by the Probation Office. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.

2. The defendant shall participate in a program of substance abuse treatment (inpatient or outpatient basis) as directed and approved by the probation office. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.

3. The defendant shall participate in a program of substance abuse testing (up to 72 drug tests per year) as directed and approved by the probation office. The defendant shall contribute to the costs of such testing based on ability to pay as determined by the probation officer.

**Addendum 5**

AO 245B  (Rev. 09/08) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page | 6 | of | 7 |

DEFENDANT: **Robert O. Robinson**
CASE NUMBER: **1:11CR00147-01ML**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | __Assessment__ | __Fine__ | __Restitution__ |
|---|---|---|---|
| **TOTALS** | $ 1,100.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all non-federal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ If applicable, Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant shall pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

  ☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**Addendum 6**

AO 245B (Rev. 09/08) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

DEFENDANT: **Robert O. Robinson**                                         Judgment — Page ___7___ of ___7___
CASE NUMBER: **1:11CR00147-01ML**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☑ Lump sum payment of $ _1,100.00_ due immediately.

☐ not later than _____, or
☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**Addendum 7**

Case: 12-2336 Document: 00116533339 Page: 65 Date Filed: 05/23/2013 Entry ID: 5735700
Case 1:01-cr-00103-ML-LDA Document 26 Filed 01/08/13 Page 1 of 2 PageID #: 21
Case 1:01-cr-00103-ML-LDA Document 25 Filed 11/07/12 Page 1 of 2 PageID #: 19

AO 245D   (Rev. 09/11) Judgment in a Criminal Case for Revocation
          Sheet 1

# UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

RECEIVED

NOV 0 7 2012

U.S. Marshals Service
District of Rhode Island

|  |  |
|---|---|
| UNITED STATES OF AMERICA <br> v. <br> **Robert O. Robinson** <br><br> **a/k/a "Robbie"** | **JUDGMENT IN A CRIMINAL CASE** <br> (For Revocation of Probation or Supervised Release) <br><br> Case Number:  **1:01CR00103-01ML** <br> USM Number:  **05065-070** <br><br> **Matthew B. Smith, Esq.** <br> Defendant's Attorney |

JDIS
ENTERED
INITIALS
atf

**THE DEFENDANT:**

☐   admitted guilt to violation of condition(s) _____ of the term of supervision.

☑   was found in violation of condition(s) _____ 1 _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| Standard Condition Violation No. 1 | The defendant shall not commit another federal, state or local crime | June 2, 2011 |

2013 JAN -8 PM 3:36

FILED

The defendant is sentenced as provided in pages 2 through ___2___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 31, 2012
Date of Imposition of Judgment

Last Four Digits of Defendant's Soc. Sec. No.:  9373

Defendant's Year of Birth:  1982

City and State of Defendant's Residence:

Woonsocket, RI

*Mary M. Lisi*
Signature of Judge

Mary M. Lisi

Chief Judge
Name and Title of Judge

*November 5, 2012*
Date

**Addendum  8**

AO 245D    (Rev. 09/11) Judgment in a Criminal Case for Revocation
           Sheet 2 — Imprisonment

|  | Judgment — Page | 2 | of | 2 |

DEFENDANT:  Robert O. Robinson
CASE NUMBER:  1:01CR00103-01ML

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**24 months incarceration to be served consecutively to the term imposed in CR11-147-01 on 10/31/2012.**

☐  The court makes the following recommendations to the Bureau of Prisons:

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ___12/26/12___ to __SCH__

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**Addendum  9**