Nos. 12-2336 & 12-2349

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————

UNITED STATES OF AMERICA,
Appellee,

v.

ROBERT O. ROBINSON,
Defendant-Appellant.

———————————

ON APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

———————————

BRIEF FOR THE UNITED STATES

———————————

PETER F. NERONHA
United States Attorney

DONALD C. LOCKHART
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 709-5030

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................i

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF THE CASE AND FACTS ..................................... 2

SUMMARY OF ARGUMENT ............................................................16

ARGUMENT ..........................................................................................18

I.   The Court Properly Denied the Continuance Motion ......................18

II.  The Implied *Allen* Claim is Baseless......................................22

III. Robinson Knowingly Waived his Right to Counsel...........................26

CONCLUSION ......................................................................................32

CERTIFICATE OF COMPLIANCE .................................................32

CERTIFICATE OF SERVICE ............................................................33

# TABLE OF AUTHORITIES

## Cases

*Faretta v. California,*
   422 U.S. 806 (1975) ................................................................ 17, 26, 31

*Iowa v. Tovar,*
   541 U.S. 77 (2004) ........................................................................ 29, 31

*Maynard v. Meachum,*
   545 F.2d 273 (1st Cir. 1976) ............................................................. 31

*United States v. Ademaj,*
   170 F.3d 58 (1st Cir. 1999) ............................................................... 19

*United States v. Allen,*
   789 F.2d 90 (1st Cir. 1986) ................................. 2, 1, 16, 22, 23, 24, 25

*United States v. Angulo-Hernández,*
   565 F.3d 2 (1st Cir. 2009) ................................................................. 20

*United States v. Beasley,*
   12 F.3d 280 (1st Cir. 1993) ............................................................... 30

*United States v. Benefield,*
   942 F.2d 60 (1st Cir. 1991) ............................................................... 30

*United States v. Brown,*
   495 F.2d 593 (1st Cir. 1974) ............................................................. 19

*United States v. DeCologero,*
   530 F.3d 36 (1st Cir. 2008) ............................................................... 18

*United States v. Francois,* __ F.3d __,
   2013 WL 1715511 (1st Cir. Apr. 22, 2013) ...... 17, 26, 27, 28, 29, 30, 31

-i-

*United States v. Genao,*
    281 F.3d 305 (1st Cir. 2002) .............................................................. 25

*United States v. Gil-Quezada,*
    445 F.3d 33 (1st Cir. 2006) ......................................................... 24, 25

*United States v. Gómez-Rosario,*
    418 F.3d 90 (1st Cir. 2005) ................................................................ 30

*United States v. Hafen,*
    726 F.2d 21 (1st Cir. 1984) ................................................................ 31

*United States v. Hicks,*
    531 F.3d 49 (1st Cir. 2008) ......................................................... 24, 25

*United States v. Kneeland,*
    148 F.3d 6 (1st Cir. 1998); ................................................................ 30

*United States v. LaBare,*
    191 F.3d 60 (1st Cir. 1999) ......................................................... 30, 31

*United States v. Machor,*
    879 F.2d 945 (1st Cir. 1989) .............................................................. 25

*United States v. Maldonado,*
    708 F.3d 38 (1st Cir. 2013) ............................................. 18, 20, 22, 24

*United States v. Mangual,*
    562 F.3d 411 (1st Cir. 2009) .............................................................. 21

*United States v. Manjarrez,*
    306 F.3d 1175 (1st Cir. 2002) .................................................. 26, 30, 31

*United States v. Mota-Santana,*
    391 F.3d 42 (1st Cir. 2004) ......................................................... 24, 25

*United States v. Neal,*
    36 F.3d 1190 (1st Cir. 1994) .............................................................. 18

*United States v. Pierce,*
 60 F.3d 886 (1st Cir. 1995) ................................................................. 25

*United States v. Pina,*
 844 F.2d 1 (1st Cir. 1988) ................................................................... 30

*United States v. Reyes,*
 352 F.3d 511 (1st Cir. 2003) ......................................................... 24, 25

*United States v. Rodriguez-Marrero,*
 390 F.3d 1 (1st Cir. 2004) ................................................................... 18

*United States v. Teemer,*
 394 F.3d 59 (1st Cir. 2005) ................................................................. 25

*United States v. Van Anh,*
 523 F.3d 43 (1st Cir. 2008) ....................................................... 23, 24, 25

## <u>Statutes</u>

21 U.S.C. § 851 .......................................................................................... 8

## STATEMENT OF THE ISSUES

1.    Whether the district court abused its discretion in (a) denying a continuance motion, or (b) handling an alleged *Allen* issue.

2.    Whether defendant knowingly waived his right to counsel.

## STATEMENT OF THE CASE AND FACTS

### A.    Procedural history overview

A District of Rhode Island grand jury charged Robert O. Robinson and four others with joining in a crack cocaine conspiracy and with ten substantive drug counts that were based on ten separate crack sales. (A:13-10.)[1] The charges stemmed from a crack cocaine business that Robinson ran from a bar that he owned in Woonsocket, after he had served an 84-month sentence in an earlier federal crack case. (*Infra* 3-5.) The four others pled guilty and have not appealed.

Robinson replaced his first retained attorney four months into the case. (*Infra* 8.) Robinson fired his second retained attorney eight months after that. (*Infra* 11-13.) Robinson finalized this second firing on a Friday before a Monday trial and three days after the jury was

---

[1]    The four appendix volumes are cited as follows: the volume with trial exhibits and other filings as "A:__", the two transcript volumes as "I:__" and "II:__", and the sealed volume as "SA:__".

empaneled. (*Infra* 12-13.) As trial was starting on Monday, Robinson informed the district court of his decision to terminate his attorney, stated that he wished to proceed *pro se*, and moved for a continuance so that he could hire an "assistant." (*Infra* 12.) The district court (Lisi, C.J.) warned Robinson against proceeding *pro se* and denied the continuance motion. (*Infra* 12-13.) After a colloquy with the court and after consulting counsel, Robinson persisted in his choice. (*Infra* 12-14.) Thereafter, Robinson represented himself at trial with his attorney serving as standby counsel and handling some aspects of the case. (*Infra* 14-15.)

After a three-day trial, a jury swiftly convicted Robinson on all counts. (II:185-187.) His attorney represented him at sentencing. (II:208-232; Docket Nos. 148, 155.) The district court sentenced him to the mandatory minimum of 20 years in prison. It also imposed a consecutive 24-month sentence based on his violation of the supervised release terms ordered in his earlier federal drug case. (II:228-229.)

Robinson timely appeals. (A:11,37,42,48.)

**B.** <u>Offense facts</u>

As Robinson does not contest the sufficiency of the evidence, the offense facts are abridged:

All ten crack sales were controlled: they were supervised by officers who recovered the drugs from an informant-purchaser after each deal was completed. (I:180-280; Exhibits 31-40.) In all but one case, officers confirmed various details through surveillance of the point of sale: a Woonsocket bar that Robinson owned called Talu's Café. (I:190-280; II:4-7.)

Each of the crack sales was audiotaped and some were partially videotaped. (A:49-105; DVD in sleeve of appendix, files for Exhibits 3-10, 12-16, 19, 21, 23, and 24.) The recordings captured the dealing in real time and established Robinson's leadership role in the drug operation that he ran from his bar. (Exhibits 3-10, 12-16, 19, 21, 23, and 24.) Robinson himself can be heard and seen taking part in some of the deals.    (A:49-51,56-60,64-75;    I:219-220,226-229,235-237,244-245,250-253,258-262,267-280; II:4-7.) His *modus operandi*, however, was to supply his minions at the bar with the crack and have *them* exchange it with the informant for cash. (II:26-51,54-73,82-102; Exhibits 3-10, 12-

16, 19, 21, 23, and 24.) As the district court later noted at sentencing: "it's quite clear to me as it was to the jury that Mr. Robinson was the head of this conspiracy. All of the other participants worked for him." (II:217.)

In a videotaped confession, Robinson: (1) admitted that he was a cocaine dealer but denied that he dealt in *crack* cocaine; (2) spoke of his Mexican cocaine sources and the methods they used to import cocaine; (3) bragged that he was at the "top of the food chain" and "smarter than all them drug dealers out there"; (4) confided that the going rate for a kilo of cocaine had risen to $37,000; and (5) noted that the amounts he sold each week varied but that he could sell a kilo in "30 seconds." (A:76-107; I:280-292; II:7-10; DVD, file for Exhibit 28.)

In three letters admitted as exhibits, Robinson urged a co-defendant not to cooperate and said that the group should claim that (a) the cocaine was not crack, and (b) they had sold the drugs as free agents and not as a team. (A:108-110,128-133.)

This strategy failed. The co-defendant who received the letters (Tonia Rawlinson) and a second co-defendant (Jason Roman) testified against Robinson. (II:54-73,82-102.) Their insider testimony directly

implicated him in six of the ten deals and confirmed his titular rank in the enterprise. (*Ibid.*) This testimony was corroborated by the evidence discussed above, and also by phone records. (I:222-225,246-247,253,262-263,268,277; DVD, file for Exhibit 54.) In addition, the informant who made the controlled crack purchases testified about each deal and his interactions with Robinson. (II:26-51.)

Finally, two chemists testified that the cocaine recovered from the ten transactions was cocaine base. (II:18-25,74-82.)

Robinson did not present a defense.

## C.  <u>Procedural history of the appellate issues</u>

### 1.  **The first retained attorney**

Robinson was arrested on a criminal complaint on June 13, 2011. (A:3.) That day, his retained attorney, Stephen DiLibero, represented him at the initial appearance. (A:3; Docket No. 4; I:3-4.) DiLibero stated that he had explained the complaint to Robinson. (I:3.) The magistrate judge also went over the complaint and other matters with Robinson. (I:3-7.) Thereafter, the parties agreed that a certain period of time should be excluded under the Speedy Trial Act (STA), and that the

deadline for filing an indictment should be extended so that they could explore a possible plea agreement. (A:3; Docket No. 7.)

Despite this joint filing, on August 2 Robinson moved *pro se* to dismiss the complaint, citing STA provisions and indicating that he disagreed with DiLibero's decision here. (A:3; Docket No. 10.) On the same date, he also filed a *pro se* motion in which he complained about DiLibero and asked that he be "removed" from the case. (A:3; Docket No. 11.) One day later, DiLibero moved to withdraw, citing a breakdown in communications. (A:4; Docket No. 12.)

At an August 17 hearing before a magistrate judge, Robinson stated that he would be hiring a new retained attorney to replace DiLiberio. (I:11-12.) In response, the judge emphasized to Robinson the importance of being represented by counsel "every step of the way" and the serious nature of the charges. (I:12.) The judge said he would hold the motion to withdraw in abeyance pending an entry of appearance by Robinson's new retained counsel, and he again stressed that it was "so important that you get a lawyer in here to represent you." (I:14.) Later that day, the grand jury returned an indictment against Robinson and the others. (A:4; Docket No. 15.)

At an August 31 hearing, a magistrate judge arraigned Robinson (still represented by DiLiberio) on the indictment, and also notified him that he faced allegations that he had violated the terms of his supervised release imposed in his earlier federal drug case. (A:4,41; I:19-28.) The judge warned Robinson that "you're exposed to a sentence of 24 to 30 months in prison on the violation case alone." (I:21.) The judge then explained the new charges. (I:23-24.) For his part, Robinson informed the court that he was hiring an attorney named Matthew Smith and that Smith would soon enter an appearance. (I:19-20.) The judge stated that he would continue to hold DiLiberio's motion to withdraw in abeyance pending that entry. (I:26.) He also indicated that he would appoint Robinson counsel if he proved to be indigent. (I:27.)

At a September 7 magistrate judge hearing, attorney DiLibero said that attorney Smith had been retained. (A:5,41; I:31.) Meanwhile, Robinson confirmed that he did not want appointed counsel. (I:31-32.)

At a September 26 magistrate judge hearing, attorney DiLibero appeared again and suggested that the Robinson family was still in the process of retaining attorney Smith. (A:5,41; I:36-38.) The judge said that if Smith did not enter an appearance by a certain date the court

would appoint an attorney for Robinson. (I:38-39.) The judge again warned Robinson that he was "facing serious charges in two cases" and stated that it was "important" that he had "an attorney involved in this case" and that he "start working closely" with an attorney "to discuss [his] defense." (I:38-39.) The judge also noted that the case had been delayed for two months as a result of these issues. (I:39.)

### 2.     The second retained attorney

On October 7 Smith entered an appearance. (A:5; Docket No. 40.) On October 14 the court granted DiLibero's motion to withdraw. (A:5.)

On October 17 the government filed an information under 21 U.S.C. § 851 notifying Robinson that in light of the crack amounts and his prior federal drug convictions he faced a mandatory minimum sentence of 20 years in prison (as well as other penalties) on Count 1 of the indictment. (Docket No. 45.) The government later filed an amended § 851 information which delineated the penalties that Robinson faced on the remaining counts. (Docket No. 71.)

Following further delays due to unsuccessful plea negotiations (Docket No. 55), on March 2, 2012, the district court set the matter down for jury empanelment on April 11, 2012. (A:6-7; Docket No. 66.)

On March 27 defense counsel moved to continue the empanelment date to allow Robinson time to consider the government's proposed plea agreement. (A:7; Docket No. 75.) The court granted the motion and set the matter down for May 15. (A:7; 3/29/12 Text Order; Docket No. 77.)

On April 17 defense counsel filed a second continuance motion citing other factors. (A:7; Docket No. 81.)

On April 23 defense counsel filed four separate discovery motions. (A:7; Docket Nos. 82-85.)

On April 24 defense counsel filed a trial memorandum discussing issues he expected to raise at trial, as well as a motion seeking extra time in which to file pretrial motions. (A:7; Docket Nos. 86-87.)

On May 2 the court held a pretrial conference. It granted the continuance and extension motions, and set jury empanelment for June 12. (A:7-8; 5/2/12 Text Orders; Docket No. 90.)

On May 15 defense counsel filed a motion to suppress certain statements made by Robinson. (A:8; Docket No. 92.) The government responded that it did not intend to introduce the statements in its case-in-chief. (Docket No. 94.) On May 22 the court denied the motion as moot. (A:9; 5/22/12 Text Order.)

On June 5 the court held a final pretrial conference. (A:9.)

The court empaneled a jury on Tuesday, June 12. At the outset of the proceedings, Robinson threatened to dress in his prison garb, but then relented. (I:42-46.) He also complained about attorney Smith and suggested that he wanted a new lawyer. (I:42-48.) In response, the court engaged in a lengthy dialogue with Robinson in an effort to determine precisely what his grievances were. (I:42-48,54-57.)

The court also heard from attorney Smith, who gave a detailed account concerning: (1) his efforts on Robinson's behalf; (2) their communications to date, some of which had been productive; (3) the discovery he had provided to Robinson; and (4) the reasons why he had refused to file various frivolous motions requested by Robinson. (I:49-54.) Smith confirmed that he was prepared to go forward with voir dire and with the trial scheduled for that coming Monday, June 18. (I:54.)

The court found there was no reason to halt voir dire or the trial and that Robinson was just engaged in delaying tactics. (I:43,55-57.) In response, Robinson suggested he would absent himself from court and waive his right to be present. (I:57-59.) After consulting with attorney Smith, however, he said that he would accept counsel's advice that he

-10-

should remain in the courtroom. (I:60-61.) Voir dire proceeded without further incident, with attorney Smith representing Robinson. (I:63-136.) The two continued to consult together in selecting the jury. (I:99,124-126,133.)

Also at the June 12 hearing, the judge noted that she had received a letter from Robinson asking that she be recused from the case. (I:45-46,61-62.) The letter was apparently received by the court on May 14, but was not docketed until later. (Docket No. 110.) The judge explained why the request was frivolous, and denied it. (I:62-63.)

### 3. Robinson fires his attorney and proceeds *pro se*

On Thursday, June 14, Robinson filed *pro se* motions to: (1) recuse the judge; (2) fire his attorney; (3) represent himself; and (4) continue the case in order to conduct further legal research. (Docket No. 106-1.) A magistrate judge returned these filings because they were unsigned and lacked certificates of service, and because Robinson was then represented by attorney Smith. (Docket No. 106.)

On Monday, June 18, the court, the parties and the jury arrived for the trial. At the outset of the proceedings, Robinson said that he was determined to wear his prison attire, apparently as an act of protest.

-11-

(I:141.) He also announced that he had just fired his second lawyer, attorney Smith: "My attorney came to see me on Friday, and I fired him because I'd rather go pro se than have him as my lawyer." (I:142.) He then moved to continue the trial so that he could "hire an assistant." (I:142,145.) He also renewed his recusal motion, alleging that the judge had been in a relationship with his father. (I:143.)

The court denied a continuance, noting: "We've selected a jury. The jurors are in the building this morning. We're ready to go." (I:142.) The court also observed that attorney Smith was fully prepared to try the case and that although Robinson was free to fire him he could not dictate the trial schedule: "But what you don't get to do, Mr. Robinson, is to pick and choose when you want to go forward. We're going forward today." (I:143.) The court also denied the recusal motion. (I:143-144.)

In responding to Robinson's statement that he wished to proceed *pro se*, the court urged him to "go forward with Mr. Smith." (I:143.) After Robinson confirmed under questioning that he had "no training in the law," the court stated: "I think you are making a huge mistake to proceed pro se since you are not trained in the law." (I:144.) In insisting that attorney Smith remain as standby counsel, the court also warned

-12-

Robinson about the dangers of representing himself when he was not familiar with the rules of evidence: "Well, I'm going to insist that [Smith] remain as your standby counsel so that you have someone at the table who can advise you as to the rules of evidence and that sort of thing. Otherwise, you're going to be walking into a land mine because you don't know the rules." (I:145.) Finally, the court told Robinson to consult with Smith before making his final decision on whether to proceed *pro se*, and the record indicates that he did so. (I:145.)

After speaking with Robinson, Smith addressed the court. Smith confirmed that when he visited Robinson in prison on Friday to show him some recently-provided discovery, Robinson informed him that he was fired. (I:145-148.) According to Smith, Robinson said that he no longer trusted him because he thought that he had been slow to turn over discovery and was too close to the prosecutor (since Smith had referred to the prosecutor as "my brother" in court). (I:146-148.) Smith reiterated that he was ready to proceed, and noted his three banker's boxes of trial preparation materials. (I:148.) But he stated that having consulted once again with Robinson, Robinson was adamant about proceeding *pro se*. (I:148.)

The court then asked Robinson how long his opening statement would be. (I:149.) Robinson replied: "About a minute or two." (I:149.) He also stated that he would appear in his prison outfit. (I:149.) The court then denied the outstanding defense motions. (I:149-152.) It also urged Robinson to changes his clothes, observing that his decision in this regard was surprising given that he was "a highly intelligent human being." (I:152.) The trial then began, with Robinson representing himself while conferring frequently with Smith. (I:155-291.)

Robinson tried to make a protest statement in his opening, but the court prevented him from doing so and he waived further argument. (I:179-180.) Thereafter, Robinson typically consulted with Smith before deciding whether to object to a given exhibit. (I:187,198,212,213,219, 222,226,233,234,236,241,242,245,250,256,257,274,278,282,286,291; II:7-9,95,96,98.) In a few instances he made further protest statements. (I:200,207-208,212.)

Although he pursued some improper lines of inquiry, Robinson was articulate and at times probing in his cross-examinations. (II:10-18,48-50,72-73,100-102.) Robinson continued to confer with counsel. (II:25,37,46,48-49,52-53,63,72,82,95,96,98,101,102.) Based on counsel's

advice, he elected not to testify. (II:105-107.) He also authorized counsel to argue for judgment of acquittal. (II:107-109.) He insisted on presenting his own closing argument, but was assisted by counsel in preparing and giving the argument. (II:113,135-148.) Putting aside some efforts to refer to facts that were not in evidence and to misstate the evidence, the closing was remarkably cogent. (II:135-148.) After the charge, he objected to the lack of a "tampering" instruction. (II:185.) When the jury returned its verdict, he insisted through attorney Smith that it be polled. (II:187.) He then conferred with Smith about the filing of a notice of appeal. (II:189.)

### 4.    Post-trial events

On July 12, 2012, Robinson filed a *pro se* motion for a new trial containing a long list of grievances. (Docket No. 122.) Though untimely and meritless, the motion was well written. (*Ibid.*) The government opposed the motion. (Docket No. 124.)

Attorney Smith represented Robinson at a post-trial hearing regarding his violation of the supervised release terms imposed in his earlier federal drug case. (II:192-206.) He also represented Robinson at sentencing. (II:208-232; Docket Nos. 148, 155.) The court denied the

new trial motion as untimely and on the merits "essentially for the reasons as set forth in the Government's memorandum." (II:232.)

Robinson filed his own notices of appeal. (A:11,37,42,48.) He noted that one of his issues was: "Whether the district court erred in allowing appellant to represent himself pro se at trial?" (Docket No. 166, at 6.)

## SUMMARY OF ARGUMENT

1.    The district court properly denied the continuance motion because: (a) the motion was untimely; (b) the firing of the first attorney and hiring of the second attorney had caused a lengthy delay, the second attorney had already received two continuances, and the case had been lingering for a full year; (c) Robinson could not articulate a legitimate grievance with the second attorney, and his reasons for postponing the trial were otherwise insubstantial; and (d) there were clear signs that he was trying to manipulate the proceedings. In any event, Robinson was not prejudiced by the denial.

2.    The implied *Allen* claim is baseless for three independent reasons: (a) the record refutes Robinson's suggestion that he sought a continuance to obtain new counsel; (b) properly understood, the *Allen*

test only applies to requests for substitute *appointed* counsel; and (c) all three *Allen* factors weigh against him in any event.

3.    The record supplies a firm basis for finding that Robinson knowingly waived his right to counsel: (a) before he decided to represent himself, a magistrate judge noted the gravity of the charges; (b) the district court not only warned that he was making a "huge mistake" but alerted him to a concrete downside of *pro se* representation (*i.e.*, he was unfamiliar with the rules of evidence); (c) he was well versed in the state and federal criminal justice systems, and indeed he had been convicted of crack offenses in that very district court and sentenced to 84 months in prison; (d) he was well aware of the penalties he faced upon conviction; (e) his grasp of the charges – which were not complex – is shown by his *pro se* motions, his statements to the court, and his creditable job in handling certain facets of the trial; and (f) the court noted he was highly intelligent, and the record supports that finding. Given these circumstances and this Court's recent decision in *Francois*, the *Faretta* claim necessarily fails.

## <u>ARGUMENT</u>

### I.    The Court Properly Denied the Continuance Motion

Robinson argues the district court erred in denying his eve-of-trial continuance motion. (Br. 32-39.) Review is for an abuse of discretion. *United States v. Maldonado*, 708 F.3d 38, 42 (1st Cir. 2013). For four main reasons, there was no such abuse here.

First, the motion was untimely. Robinson's written motion was filed on a Thursday before a Monday trial, he finalized the firing of his attorney on Friday, and he explained his position orally on Monday, after the jurors, attorneys and witnesses had gathered to start the case. (*Supra* 11-12.) *See, e.g.*, *Maldonado*, 708 F.3d at 42-43 (motion on first day of trial untimely); *United States v. DeCologero*, 530 F.3d 36, 79 n.27 (1st Cir. 2008) (same); *United States v. Rodriguez-Marrero*, 390 F.3d 1, 22 (1st Cir. 2004) (motion on day before trial untimely); *United States v. Neal*, 36 F.3d 1190, 1205-06 (1st Cir. 1994) (motion ten days before trial so defendant could seek retained counsel was "belated"). Although he had complained about his attorney and the pace of the proceedings at the empanelment, six days before trial, he ultimately stuck with that

attorney through jury selection and the attorney never moved for a continuance. (*Supra* 10-11.)

Second, the firing of the first attorney and hiring of the second attorney had caused a lengthy delay, the second attorney had already received two continuances, and the case had been lingering for a full year. (*Supra* 6-10.) *See, e.g.*, *United States v. Ademaj*, 170 F.3d 58, 64-65 (1st Cir. 1999) (challenge to denial of continuance was "frivolous" where motion was made on first day of trial and there had been a "nine-month delay resulting from five previous continuances"); *United States v. Brown*, 495 F.2d 593, 600 (1st Cir. 1974) (affirming denial of continuance motion made on first day of trial so that defendant "could retain new counsel," where he was "already represented by adequate counsel" and "was now seeking his third attorney in this matter").

Third, Robinson could not articulate a *legitimate* grievance with the second attorney, who had represented him for eight months and who was fully prepared for trial. (*Supra* 8-14.) The allegations that counsel delayed providing Robinson with discovery and that he was too close to the prosecutor (since he had called the prosecutor "my brother" in court) had no basis in the record. (*Supra* 10-14.) Neither did

Robinson explain what he could accomplish with the benefit of an "assistant" or with more time to conduct legal research. (*Supra* 11-12.) Thus, the reasons for the last-minute postponement were insubstantial.

Fourth, given that Robinson had (a) cycled through two different attorneys, (b) threatened to wear his prison clothes, and (c) filed a series of meritless *pro se* motions, including an unfounded recusal request alleging that the judge had been romantically involved with his father, there was every indication that he was trying to manipulate the proceedings. (*Supra* 5-14.) *See, e.g.*, *Maldonado*, 708 F.3d at 43 (noting evidence of obstruction in affirming denial of continuance motion).

In sum, this is not a case of "unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *United States v. Angulo-Hernández*, 565 F.3d 2, 12 (1st Cir. 2009) (internal quotation marks omitted). Robinson does not cite a single case in which denial of a continuance on facts such as these was held to be an abuse of discretion. If the Court were to accept his argument it would merely create an incentive for obstruction.

In any event, Robinson cannot demonstrate that the denial of the continuance prejudiced him. *See, e.g.*, *United States v. Mangual*, 562

F.3d 411, 430-31 (1st Cir. 2009) (denial of continuance was an abuse of discretion but defendant was not prejudiced).

The case against Robinson was not just overwhelming. It was airtight. The insider testimony of two witnesses established that he was the head of a crack cocaine operation that he ran from his bar. (*Supra* 4-5.) His involvement in that business was captured in real time on audio and videotape. (*Supra* 3.) It was also confirmed by his incriminating letters, by the testimony of the informant who made the ten controlled crack purchases, by surveillance evidence, and by telephone records. (*Supra* 3-5.) Any chance that he had of avoiding conviction in the face of this evidence was erased by his recorded confession, in which he admitted that he was a large-scale cocaine dealer and merely claimed that he did not sell *crack* cocaine. (*Supra* 4.) The undisputed testimony of two chemists refuted this narrower contention. (*Supra* 5.)

Robinson offers no basis for thinking that with additional time he could have devised a winning strategy. That is, he "makes no showing of specific and compelling prejudice" because he fails to establish that there were steps that he could have taken that would have promised a "realistic prospect of success" in that they could have "altered the

verdict." *Maldonado*, 708 F.3d at 43-44. Thus, his claim here necessarily fails even assuming *arguendo* that the district court abused its discretion in denying his eleventh-hour continuance motion.

## II.    The Implied *Allen* Claim is Baseless

Robinson cites case law based on *United States v. Allen*, 789 F.2d 90 (1st Cir. 1986), which addresses the steps a court should take when (1) there is an alleged irreversible breakdown in the relationship between a defendant and his court-appointed counsel, and (2) it is assessing whether to appoint substitute counsel. (Br. 33-39.) The implied *Allen* claim is unpreserved. It would fail for three independent reasons, however, even if Robinson receives the benefit of the abuse-of-discretion standard. *See Maldonado*, 708 F.3d at 44.

First, as a threshold matter, Robinson is incorrect in suggesting that he sought a continuance to obtain new counsel – whether privately-retained or court-appointed. (Br. 2, 32, 35.) To the contrary, Robinson made clear that he would represent himself *pro se*, and he never once stated that he intended to hire a third attorney. (*Supra* 11-14.) In his written continuance motion he said he needed more time to undertake

his own legal research and wanted a "law library." (Docket No. 106-1, at 3.) And when he moved orally for a continuance on the first trial day, he said he "need[ed] some time to hire an assistant," leaving little doubt that he fully intended to conduct his own defense. (I:142.) After stating a desire to hire an assistant, he even drew a distinction between an assistant and an attorney: "It's also my right to choose my own attorney or choose an assistant." (I:145.) He clearly wanted the latter.

Second, even assuming *arguendo* that Robinson made clear that he wished to hire a third attorney, the fact remains that this is not an *appointed* counsel case. Robinson privately retained attorney Smith and he was free to fire him at will. *See United States v. Van Anh*, 523 F.3d 43, 48 n.3 (1st Cir. 2008) (explaining distinction); *United States v. Woodard*, 291 F.3d 95, 107 (1st Cir. 2002) (same). Although courts must moderate disputes between defendants and court-appointed counsel, if necessary appointing substitute counsel, they do not play the same role when a defendant opts to replace one retained lawyer with another. Thus, the *Allen* test is of dubious relevance. *See Woodard*, 291 F.3d at 107 (doubting applicability of *Allen* where defendant was represented

by private counsel); *see also Maldonado*, 708 F.3d at 44 (same); *United States v. Mota-Santana*, 391 F.3d 42, 47 (1st Cir. 2004) (same).

Third, Robinson's claim would still fail even if the *Allen*-based case law were controlling, as all three *Allen* factors weigh against him.

Even if Robinson's continuance motion can be construed as a request for new counsel, it was untimely. *See, e.g., Van Anh*, 523 F.3d at 49 (motion for new counsel six days before trial untimely); *United States v. Reyes*, 352 F.3d 511, 515 (1st Cir. 2003) (motion for new counsel one week before trial untimely); *Woodard*, 291 F.3d at 107-08 (affirming denial of request for new counsel where it was first made 13 days before trial, district court conducted adequate inquiry, and counsel's "failure to file a suppression motion that he considered meritless does not constitute good cause for substitution of counsel").

Next, the court conducted a lengthy inquiry into the dispute between Robinson and attorney Smith, and it listened patiently to the accounts of both men. (*Supra* 10, 12-14.) That inquiry was more than "adequate." *Allen*, 789 F.2d at 92.[2]

---

[2]     *See, e.g.*, *United States v. Hicks*, 531 F.3d 49, 51-52, 54-55 (1st Cir. 2008); *Van Anh*, 523 F.3d at 48-50; *United States v. Gil-Quezada*, 445 F.3d 33, 35-36, 38 (1st Cir. 2006); *United States v. Teemer*, 394 F.3d 59,

And finally, there was no evidence of a complete and irreversible breakdown in the attorney-client relationship. The record reveals that: (1) attorney Smith had worked doggedly on Robinson's behalf and was fully prepared for trial; (2) the two had communicated productively up to that point; (3) they continued to communicate during and after trial; and (4) Robinson's two main complaints (that Smith had been slow to share discovery with him and that he was too close to the prosecutor) were unfounded. (*Supra* 8-14.) In addressing this *Allen* factor, the Court has affirmed the refusal to replace appointed counsel where the alleged communication lapses were far more profound, and even where there was evidence of outright hostility between lawyer and defendant.[3]

In short, Robinson's reliance on *Allen*-based precedents is of no avail. And there was certainly no abuse of discretion.

---

61-62, 66-67 (1st Cir. 2005); *Mota-Santana*, 391 F.3d at 44-45, 47; *Reyes*, 352 F.3d at 515-16; *United States v. Genao*, 281 F.3d 305, 312-13 (1st Cir. 2002); *United States v. Pierce*, 60 F.3d 886, 888, 891 (1st Cir. 1995); *United States v. Machor*, 879 F.2d 945, 951-53 (1st Cir. 1989).

[3]    *See, e.g.*, *Hicks*, 531 F.3d at 51-52, 54-55; *Van Anh*, 523 F.3d at 48-50; *Gil-Quezada*, 445 F.3d at 38; *Mota-Santana*, 391 F.3d at 44-48; *Reyes*, 352 F.3d at 516-17; *Woodard*, 291 F.3d at 99-106, 108-09; *Genao*, 281 F.3d at 311-13; *Pierce*, 60 F.3d at 888, 891; *Machor*, 879 F.2d at 951-53; *Allen*, 789 F.2d at 92-93 & n.3.

## III.   Robinson Knowingly Waived his Right to Counsel

Robinson argues the district court did not adequately inquire into his decision to represent himself, to ensure that he knowingly waived his right to counsel, as required by *Faretta v. California*, 422 U.S. 806, 807 (1975). (Br. 39-49.) As he concedes (Br. 39), review is for an abuse of discretion. *See United States v. Manjarrez*, 306 F.3d 1175, 1179 (1st Cir. 2002). Again, there was no abuse.

This case compares favorably with *United States v. Francois*, __ F.3d __, 2013 WL 1715511 (1st Cir. Apr. 22, 2013), in which the Court recently rejected a stronger *Faretta* claim. The defendant in that case, Roldy Francois, had no previous experience with the federal criminal justice system. *Id.* at *3. When he stated on the day of empanelment that he wished to proceed *pro se*, the district court told him that this would be a "terrible" and "very bad" idea and a "catastrophic mistake." *Id.* at *3-4. The court did not discuss any concrete disadvantages of self-representation, however, or explain the penalties that he faced if convicted. *Id.* at *6. As here, the court insured that Francois had the benefit of standby counsel, who handled some aspects of the trial. *Id.* at *4.

Although this Court noted that it would have been better practice to take these extra steps, it found sufficient evidence that Francois' waiver was knowing for three main reasons. *Id*. at *6-7. First, Francois was actively engaged in his own defense from an early point in the case, and his *pro se* motions and arguments reflected that he "was fully aware of the nature of the charges against him." *Id*. at *7. Second, Francois had lengthy discussions with the district court, during which he was lucid and articulate. *Id*. And third, there was some evidence in the record which suggested that Francois was aware of the penalties he faced. *Id*.

For six main reasons, there is an even firmer basis for finding that Robinson's waiver was knowing:

First, before Robinson decided to represent himself, a magistrate judge warned him of the gravity of the charges and of the importance of being represented by counsel "every step of the way." (*Supra* 6-8.)

Second, after Robinson announced that he intended to proceed *pro se*, the district court engaged in a colloquy with him. The court first confirmed that he had no legal training and urged him to continue with attorney Smith. (*Supra* 12-13.) As in *Francois*, the court then stated: "I

think you are making a huge mistake to proceed pro se since you are not trained in the law." (*Supra* 13.) But unlike in *Francois*, the court went further and pointed out a concrete downside of self-representation: Robinson would be "walking into a mine field" because he did not know the federal rules of evidence. (*Supra* 13.)

Third, unlike Francois, Robinson was no newcomer to the federal criminal justice system. Indeed, in 2002 he was convicted of crack cocaine distribution charges in that very federal court and sentenced to 84 months in prison. (SA:12.) He had also had numerous encounters with the state criminal justice system, resulting in several convictions, including a felony drug conviction. (SA:9-15.)

Fourth, beyond Robinson's experience in the earlier federal crack case, there is other evidence which makes clear that he knew the penalties he faced if convicted. During his recorded interview, and even before he was charged, Robinson tried to persuade the interviewing agent that he had dealt in powder cocaine and not crack cocaine, plainly because he was aware of the relative penalty differences. (A:78,87,90-91,100-101; II:7-8.) He also asked the agent: "Why would you want to put me away for twenty years when I can put away all these drug

dealers . . . and more from Mexico to here?" (A:84.) In one of the letters admitted as an exhibit at trial, he stated: "you know I am facing 15 or 20 years if I lose [the] trial." (A:108.) The magistrate judge warned him that in addition to the sentence that he faced in the present case, "you're exposed to a sentence of 24 to 30 months in prison on the violation case alone." (*Supra* 7.) Moreover, the government's § 851 notices informed him in minute detail concerning all the possible penalties. (Docket Nos. 45, 71.) Ultimately his sentence was exactly as expected: 20 years in the present case and 24 months for the supervised release violation. (II:228-229.)

Fifth, as in *Francois*, Robinson's grasp of the charges is shown by his pre- and post-trial *pro se* motions, by his statements to the court, and by his creditable cross-examinations and closing argument. (*Supra* 6, 10-16.) In this regard, it bears noting that the drug charges here were straightforward; they were not at all complex. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (waiver of right to counsel more likely to be knowing if charges are "easily grasped" and not "complex").

Sixth, these same sources reveal that Robinson was an articulate and able advocate by *pro se* standards. The district court, which had

many interactions with him over the months, commented several times on his high intelligence. (I:43,152; II:226-227.) Moreover, the record reflects that while serving his earlier federal drug sentence, Robinson earned a General Equivalency Diploma and took a number of other educational courses. (SA:18.) After his release, he became the owner of three businesses and acquired a contractor's license. (SA:19; Docket No. 166, at 2.) He was far more advanced than Francois by any measure.

Under these circumstances, there was sufficient assurance that Robinson's waiver of his right to counsel was knowing, even though, ideally, the court might have noted additional details concerning trial procedure and the penalties that he faced upon conviction. *See, e.g.*, *Francois*, 2013 WL 1715511, at *6-7; *United States v. Gómez-Rosario*, 418 F.3d 90, 98 n.6 (1st Cir. 2005); *Manjarrez*, 306 F.3d at 1179-80; *Woodard*, 291 F.3d at 109-110; *United States v. LaBare*, 191 F.3d 60, 67-68 (1st Cir. 1999); *United States v. Kneeland*, 148 F.3d 6, 11-12 (1st Cir. 1998); *United States v. Beasley*, 12 F.3d 280, 285 (1st Cir. 1993); *United States v. Benefield*, 942 F.2d 60, 64-66 (1st Cir. 1991); *United States v. Pina*, 844 F.2d 1, 6 n.3 (1st Cir. 1988); *United States v. Hafen*,

726 F.2d 21, 24-26 (1st Cir. 1984); *Maynard v. Meachum*, 545 F.2d 273, 277-79 (1st Cir. 1976).

As Robinson concedes (Br. 41), the case law does not require a *Miranda*-style list of warnings. Indeed, the Supreme Court itself has stated that it has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88. Rather, "[t]he information a defendant must possess in order to make an intelligent decision . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id*. This Court's decisions reflect the same focus. *See, e.g., Francois*, 2013 WL 1715511, at *6-7; *Manjarrez*, 306 F.3d at 1179; *LaBare*, 191 F.3d at 68; *Maynard*, 545 F.2d at 277.

In sum, the case-specific factors discussed above undermine Robinson's *Faretta* claim. And at the very least, there was no abuse of discretion.

## CONCLUSION

For the above reasons, this Court should affirm.

Respectfully submitted,

PETER F. NERONHA
United States Attorney

/s/ Donald C. Lockhart

DONALD C. LOCKHART
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because it contains 6,258 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface rule in Fed. R. App. P. 32(a)(5) and the type style rule in Fed. R. App. P. 32(a)(6) because it uses a proportionally spaced, serif typeface (*i.e.*, Century Schoolbook) in 14-point font.

/s/ Donald C. Lockhart

_____

DONALD C. LOCKHART
Assistant U.S. Attorney
Dated:  May 29, 2013

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 29, 2013, I electronically served a copy of the foregoing filing on the following registered participants of the CM/ECF system:

> Kenneth I. Seiger, Esq.
> P.O. Box 470725
> Brookline, MA 02447
>
>
> /s/ Donald C. Lockhart
> _____